**Luis V. FLAMAND, Jr., et al., Plaintiffs,**

v.

**AMERICAN INTERNATIONAL GROUP, INC., et al., Defendants.**

**Civ. No. 92–1541 (HL).**

United States District Court,
D. Puerto Rico.

Oct. 17, 1994.

Ruben T. Nigaglioni, Ledesma, Palou & Miranda, Nilda M. Navarro–Cabrer, Hato Rey, PR, for plaintiffs Luis V. Flamand, Jr., Diana C. Mendez Ondina, Conjugal Partnership Composed Between Luis V. Flamand, Jr. and Diana C. Mendez Ondina.

Vicente J. Antonetti, Goldman, Antonetti & Cordova, San Juan, PR, P. Kevin Connelly,

Connelly, Sheehan & Moran, Chicago, IL, for defendants American Intern. Group, Inc., American Intern. Underwriters, American Intern. Underwriters Corp., American Intern. Underwriters, American Intern. Underwriters Caribbean, Inc., Peter Hammer, Gloria Subirats.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court are a flurry of motions for summary judgment and motions to dismiss filed by the parties. First, the Court shall address the Individual Defendants' Motion For Summary Judgment (dkt. no. 163), Corporate Defendants' Motion For Summary Judgment (dkt. no. 164), Plaintiffs' Opposition To The Corporate Defendants' And The Individual Defendants' Motions For Summary Judgment (dkt. no. 177), and Plaintiffs' Brief thereto (dkt. no. 179). Next, the Court shall discuss Defendant's Joint Motion For Partial Summary Judgment (dkt. no. 69), Plaintiffs' Opposition To Defendants' Motion For Partial Summary Judgment (dkt. no. 80), and Plaintiffs' Brief thereto (dkt. no. 81). Thereafter, the Court shall address Defendants' Joint Motion To Dismiss The Defamation Claim (dkt. no. 70) and Plaintiffs' Opposition To Motion To Dismiss Defamation Claim (dkt. no. 79). And Finally the Court shall discuss Defendants' Motion To Dismiss And/Or For Summary Judgment (dkt. no. 6), Plaintiffs' Opposition thereto (dkt. no. 27), Defendants' [Renewed] Motion To Dismiss And/Or For Summary Judgment (dkt. no. 34), Plaintiffs' Opposition thereto (dkt. no. 44), Defendants' Reply Brief Supporting Motion To Dismiss Mrs. Mendez Ondina's Claims (dkt. no. 71), Plaintiffs' Opposition To Defendants' Reply Brief Supporting Motion To Dismiss Mendez Ondina's Claim (dkt. no. 82), and Plaintiffs' Supplemental Opposition to Motion To Dismiss And/Or For Summary Judgment (dkt. no. 100).

## I. BACKGROUND

Plaintiffs are Luis V. Flamand, Jr. ("Flamand"), former president of AIU Caribbean, his wife, Diana C. Mendez Ondina ("Mendez"), and the conjugal partnership constituted between them. Defendants are American International Group, Inc. ("AIG"), American International Underwriters Corporation ("AIU"), American International Underwriters Caribbean, Inc. ("AIU Caribbean"), Peter Hammer, former supervisor of Flamand, and Gloria Subirats, Personnel Director of the Latin American Division of AIU. Flamand has brought suit under the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and Law 100, 29 L.P.R.A. § 146, et seq. claiming disparate treatment, retaliation, harassment and constructive discharge, under Law 80, 29 L.P.R.A. § 185, et seq. claiming wrongful discharge and failure to pay severance pay, under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 and 5142 claiming abuse of process, malicious prosecution and tortious interference, under Article 1401 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2991, et seq. claiming breach of contract, and under Puerto Rico Law claiming defamation. This Court has jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.

## II. STANDARDS

### A. Motion To Dismiss Standard

"The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990). Thus, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991). The court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 276, 96 S.Ct. 2574,

2576–77, 49 L.Ed.2d 493 (1976); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). *But see, Correa–Martinez*, 903 F.2d at 52 ("[d]espite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation.").

### B. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The nonmoving party cannot rest upon mere conclusory allegations, improbable inferences and unsupported speculation. *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993), *reh'g denied*, March 12, 1993. Likewise, the nonmoving party cannot rest on the pleadings but should set forward specific facts showing that there are genuine triable issues. *Id.* Supporting and opposing affidavits shall be based upon personal knowledge and set forth facts that would be admissible into evidence at trial. Fed. R.Civ.P. 56(e). All material facts set forth in the movant's statement of uncontested facts will be deemed to be admitted unless controverted by the nonmovant in a separate, short, concise statement of material facts at issue. Local Rule 311.12. *See also, Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930 (1st Cir.1983).

A fact is material, if under applicable substantive law, it may affect the result of the case. *Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 73 (1st Cir.1990). A dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *Id.* In determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Prods., Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *John & Kostas Serv. Station, Inc. v. Cumberland Farms, Inc.*, 948 F.2d 821, 822 (1st Cir.1991).

### III. DISCUSSION

### A. Individual Defendants' Summary Judgment Motion

Individual Defendants' Motion, dkt. no. 163, requests summary judgment on the following claims: (1) ADEA Claims, (2) Law 80 severance pay claim, (3) contract claim for severance pay, and (4) defamation claims.

#### 1. ADEA Claims

Defendants argue that Hammer, as Flamand's former supervisor, is only liable in his *official capacity* under ADEA's "employer" definition, and that Subirats is not liable at all because she does not fit ADEA's definition of "employer." Defendants argue that Subirats was (1) not even Flamand's supervisor and (2) did not exercise significant control over Flamand.

Plaintiffs argue that supervisors are liable under ADEA in both their official and personal capacity. Additionally, plaintiffs argue that Subirats had authority over decisions directly affecting Flamand's conditions of employment. For example, plaintiffs state that Subirats attempted to change Flamand's home base from Los Angeles to New York and that Subirats withheld Flamand's last pay check.

Under ADEA, it is unlawful "for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The term "employer" includes any agent of an employer. 29 U.S.C. § 630(b). The First Circuit is silent as to the issue of whether supervisors constitute "employers" under ADEA. Most courts, usually following Title VII precedent,[1] hold a super-

---

1. Because of the statutory similarity between ADEA and Title VII, prior to the 1991 amend-

visor liable as an "employer" under ADEA in the supervisor's *official capacity* only.[2] However, a few courts have found supervisors to be both individually and officially liable under ADEA. *House v. Cannon Mills*, 713 F.Supp. 159 (M.D.N.C.1988) (supervisors individually liable under ADEA); *Wanamaker v. Columbian Rope*, 740 F.Supp. 127 (N.D.N.Y.1990).

■ In determining whether or not a supervisor is liable under ADEA as an "employer," courts must not lose sight of the statutory fact that violations of ADEA are considered violations of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201, et seq.,[3] and that ADEA *explicitly* incorporates the remedial scheme set forth in sections 216(b)–(d) [4] and 217 [5] of FLSA.[6] FLSA provides a cause of action against employers

---

ments, courts have held that Title VII case law is applicable to the determination of whether individual defendants were personally liable under ADEA. *See, Miller v. Maxwell's Intern, Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372, *reh'g denied,* —— U.S. ——, 114 S.Ct. 1585, 128 L.Ed.2d 226 (1994).

This Court shall not rely on Title VII case law in its analysis of supervisor liability under ADEA, but rather shall turn to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., due to FLSA's similarity and special relationship to ADEA.

2. *See, Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *aff'd in pertinent part*, 900 F.2d 27 (4th Cir.1990) (en banc) (an individual is an "employer" under Title VII if said individual has "significant input into … personnel decisions" such as hiring, firing, determining work assignments); *Barger v. State of Kan.*, 630 F.Supp. 88, 91–92 (D.Kan.1985) (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982) (an ADEA case relying on Title VII case law finding that supervisors are liable only in their official capacities)); *Miller*, 991 F.2d at 588 (Following Title VII precedent, the Court decided that under ADEA, individual defendants are not liable in their personal capacity); *Harvey v. Blake*, 913 F.2d 226, 227–28 & n. 2 (5th Cir.1990) (under a liberal construction of Title VII, immediate supervisors are "employers" "when delegated the employer's traditional rights, such as hiring and firing" and then such supervisors are liable as an agent of the employer and therefore "any recovery to be had must be against [said supervisor] in her official capacity"); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (agreeing with the Fifth Circuit that "[i]ndividual capacity suits under Title VII are … inappropriate." (emphasis ours)); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) (an employer is liable for actions by an individual who meets the definition of "employer" under Title VII if he is a supervisor and significantly controls plaintiff's hiring, firing, or employment conditions). *But see, Gaddy v. Abex Corp.*, 884 F.2d 312, 318–19 (7th Cir.1989) (upheld personal liability under Title VII against supervisor without stating that they meet the definition of "employer"); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir.1986) (stating that the definition of "employer" under Title VII is broad

and should be accorded a liberal interpretation, and therefore individuals who participate in the decision making process that forms the basis of the discrimination claim are "agents" and therefore "employers"; to find otherwise, stated the Court, "would encourage supervisory personnel to believe that they may violate Title VII with impunity.") (later distinguished as "nonauthoritative" in *Harvey*, 913 F.2d at 228 n. 2.)

3. Section 626(a) of ADEA provides that "[a]ny act prohibited under section 623 of this title[, which lists the practices prohibited by ADEA,] shall be deemed to be a prohibited act under section 215 of this title[, which lists the acts prohibited by FLSA.]" 29 U.S.C. § 626(b). *See Lorillard v. Pons*, 434 U.S. 575, 582, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978).

4. Section 216(b) of FLSA states in part that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

5. Section 217 of FLSA provides that "[t]he district courts … shall have jurisdiction … to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter…." 29 U.S.C. § 217.

6. ADEA provides that "[a]mounts owing to a person as a result of a violation of this chapter shall be deemed to be *unpaid minimum wages or unpaid overtime compensation* for the purposes of *sections 216 and 217 of this title* [FLSA]: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement, or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. § 626(b) (emphasis added).

who violate the FLSA provisions prohibiting certain conduct within the employer-employee relationship and within the employment context. FLSA is a labor law, not a tort law. Therefore, ADEA's special relationship with FLSA underscores the actuality that ADEA is a labor law, a law dealing with employer-employee relationships, particularly as it pertains to enforcement and remedial actions.

Mirroring FLSA's remedial scheme, ADEA permits the recovery by a successful plaintiff of the following amounts: (1) unpaid minimum wages, (2) unpaid overtime compensation, and (3) upon a showing of a willful violation, liquidated damages in a sum equal to the total amount of unpaid wages and compensation. Providing that "[a]mounts owing as a result of a violation of this act shall be deemed to be unpaid minimum wages or unpaid overtime compensation," 29 U.S.C. § 626(b), ADEA classifies plaintiff's possible recovery as "amounts [in] . . . *wages,*" not as damages. And then, specifying that liquidated damages are only "wages" as well, ADEA continues "*Provided,* That liquidated damages shall be payable only in cases of willful violations. . . ." In fact, the First Circuit has declared liquidated damages to be nothing more than "doubled backpay." *Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 721 (1st Cir.1994). Therefore, a close inspection of ADEA remedies reveals that all three forms of available recovery are based upon the wages paid by the employer to the employee, and not upon consequential damages. ADEA's equitable relief, such as reinstatement, may be effectuated only by the employer as well. 29 U.S.C. § 626(b). Consequently, it is clear that ADEA's remedies are targeted at the employer, because the employer solely controls the payment of wages and the reinstatement of ADEA's discriminatees. It necessarily follows that it would be nonsensical for a supervisor to be held liable under ADEA. And even though the First Circuit's recent holding that liqui-

dated damages serve a punitive function [7] may suggest the possible conclusion that holding a supervisor liable under ADEA would achieve its punitive intent, the actual effect of holding the employee's supervisor liable for liquidated damages would be the absurd situation of having the true employer pay the unpaid wages and the supervisor pay the additional amount of unpaid wages as liquidated damages. Such a severing of the remedies in no way appears intended by ADEA, or by its statutory cousin FLSA, and this Court refuses to so torture ADEA.

Moreover, upon an understanding of the rationale behind defining an "employer" as any agent of the employer, it becomes even more apparent that a supervisor may not be held liable under ADEA. The statute's identification of an agent of the employer as the "employer" itself serves the sole purpose of binding the employer through its agency relationships to discriminatory acts undertaken by not merely the employer's employees but also those who work for the employer outside of the company. Said "employer" definition removes the possible defense of an employer who otherwise might attempt disowning responsibility for the acts of his employees or other agents.[8] As such, the definition of "employer," which includes the employer's agents, serves not as a vehicle to impute liability upon said agent, but rather as a means to incorporate respondeat superior liability into the Act. *See Miller,* 991 F.2d at 587.

In sum, the tradition of ADEA rooted in FLSA, the context of the employer-employee relationship within which ADEA is imbedded, and the language of the statute itself compel the conclusion that only the employee's employer may be liable under ADEA. In finding that supervisors are not liable under ADEA, the Court need not venture into a discussion of whether said super-

**7.** *Sanchez,* 37 F.3d at 725 ("Liquidated damages under ADEA are punitive in nature.").

**8.** It is important to note that ADEA's statutory scheme is different from a general tort action in that the latter involves a duty to the entire society whereas ADEA involves a duty owed by the employer only to its employees. For a more general discussion on whether or not ADEA provides a tort-type cause of action see *Downey v. Commissioner of Internal Revenue,* 33 F.3d 836 (7th Cir. 1994) (ADEA does not provide a tort-type claim) and *Schmitz v. Commissioner of Internal Revenue,* 34 F.3d 790 (9th Cir.1994) (ADEA does establish a tort-like cause of action).

visors are liable in their official or personal capacity. Nevertheless, the Court questions the utilization without pause of the official/individual capacity analysis by other circuits as a distinction without a difference.[9] Said framework is relevant in a cause of action against a public official who may be entitled to full or qualified immunity, as in a section 1983 action. The transposition of the sovereign/qualified immunity doctrine onto the private sector is unwarranted and awkward because a private employer does not enjoy sovereign, full or qualified immunity and is bound by the actions of its supervisors. The unearthing and highlighting of the interplay between FLSA and ADEA demonstrate the irrelevance of dividing a supervisor's liability into his official and/or individual capacity in the private sector.[10] Therefore, finding that a supervisor is not liable under ADEA, the Court **grants** defendants' motion for summary judgment on the ADEA claim as against defendant Hammer and Subirats.[11]

### 2. Law 80 Claim For Severance Pay

Defendants next argue that defendants Subirats and Hammer cannot be held liable under Law 80 for severance pay because an employee "who is discharged ... without good cause shall be entitled to receive from his *employer*" a severance payment. 29 L.P.R.A. § 185a (emphasis added). Because "employer" is not defined in the law itself, defendants argue that employer must be defined as only those who normally pay wages or salary. Plaintiffs argue that "employer" under Law 80 includes agents, managers, administrators and representatives of the employer because other statutes in Title 29 of the Puerto Rico Law Annotated utilize said definition. *See* 29 L.P.R.A. §§ 142,[12] 155(a),[13] 139,[14] and 194.[15]

The sections cited by plaintiff specifically define either the sections of Title 29 or the circumstances under which the definition shall be used. None of these definitions refer to Law 80 or circumstances present in a Law 80 claim. And, as stated above, there is no explicit definition for "employer" under Law 80. Additionally, the only remedies available under Law 80 is the salary the employee may have earned, the salary corresponding to one month as indemnity, and an additional indemnity equal to one week for each year in employ. Therefore, because the remedy is based on wages, and because it does not make sense that a supervisor should pay wages to an employee, this Court does not find that supervisors are "employers"

9. *See infra* note 2 and accompanying text.

10. The Court of course expresses no opinion as to the application of the individual/official capacity defense in the public sector or suits against state agencies in general under ADEA.

11. In regards to the question of whether or not the corporate defendants as plaintiff Flamand's "employer" under ADEA may be liable for the actions of defendant Subirats, the Court notes that even if an employee is not a supervisor per se, an employee may exercise supervisory authority over plaintiff for ADEA purposes. *See, Paroline*, 879 F.2d at 104 ("As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold 'employer' status for Title VII purposes.").

12. 29 L.P.R.A. § 142 states "In sections 140–143 of this title ... the word 'employer' shall include any natural or artificial person employing workmen or employees, and the manager, administrator, ... or representative of said natural of artificial person."

13. 29 L.P.R.A. § 155a states "For the purposes of sections 155–1551 of this title, the following terms shall have the meaning stated hereinbelow ... 'Employer'—Any natural of juridical person of any kind ... which employ persons for any kind of compensation ... and their agents and supervisors."

14. 29 L.P.R.A. § 139, which is under the section of "Interference with political party affiliation" 29 L.P.R.A. § 136, states "The term 'employer' includes every natural or artificial person employing laborers, workmen or employees, and the head, official, manager, officer, managing partner, administrator, supervisor, foreman, overseer, agent or representative of said natural or artificial person." Under 29 L.P.R.A. § 136, the employer may be liable for a sum no less than fifty dollars and no more than one thousand dollars or double the amount of the pecuniary damages.

15. 29 L.P.R.A. § 194 is entitled Reprisals against employee for offering testimony, and defines employer as "whichever person that has one or more employees. This includes the agents of the employer." (Translation ours).

under 29 L.P.R.A. § 185a.[16] Accordingly, the Court finds that defendants Hammer and Subirats are not "employers" under Law 80. The Court hereby **grants** defendants' motion for summary judgment and shall dismiss the Law 80 severance pay claim as against Hammer and Subirats.

### 3. Contract Claim For Severance Pay

■ Defendants also contend that because plaintiffs do not allege that Hammer or Subirats promised to pay Flamand severance "out of their own pockets" (emphasis omitted), Hammer and Subirats are not appropriate defendants in plaintiffs' breach of contract claim for severance pay. Plaintiffs object. Neither party, however, offers any law. It seems from the facts that plaintiffs are alleging that Hammer and Subirats are liable as agents of the corporate defendants. Therefore, plaintiffs' cause of action exists only against those corporate defendants with whom plaintiff allegedly contracted and not said defendants' agents. Accordingly, the Court **grants** defendants' motion and shall dismiss plaintiffs' contract claim for severance pay as against Hammer and Subirats.

### 4. Defamation Claims

■ A defamation claim entails plaintiffs proving (1) that the information is false, (2) that the information was published with full knowledge of its falsehood, (3) that the publication was negligent, and (4) plaintiff suffered real damages. *Villanueva v. Hernandez Class*, 91 J.T.S. 58, p. 8697 (1991) (citing *Torres–Silva v. El Mundo*, 106 D.P.R. 415, 421, 427, 106 Off.Trans. 581, 589–91, 598 (1977)). Defendants argue that each alleged defamatory statement constitutes a separate claim. *See De Leon v. St. Joseph Hosp.*, 871 F.2d 1229 (4th Cir.), *cert. denied*, 493 U.S. 825, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989). Plaintiffs oppose this argument stating that

there is only one defamation claim, which is supported by various statements.

■ The Court finds that Puerto Rico defamation law analyzes whether a certain "publication" was defamatory not whether "statements" are defamatory. It is true that upon one defamation statement, plaintiffs can prove defamation and be awarded a remedy. And unlike such claims as hostile work environment sexual harassment, a defamation claim is not based upon an environment or a pattern of behavior and thus the accumulation of various defamatory statements does not strengthen the defamation claim. Having a second allegedly defamatory statement does not enhance the believability of the first statement in any way. The Court finds that two separate statements may be separate claims if they are conveyed in different publications, conveyed by different people, or conveyed to different people. Accordingly, in light of the foregoing, the Court has divided plaintiffs' examples of defamation into different claims when the information conveyed was published at different times, to different people, or by different people.

Plaintiffs' first claim alleges Tolentino informed Flamand that Subirats told a group of people that Flamand had "mismanaged funds," breached his fiduciary duties, wrongfully gave economic advantages to certain employees, was having serious problems, and was being sued by the company.[17] Subirats in her affidavit states that she did not make these statements; Flamand in his affidavit states that Tolentino told him that Subirats did make these statements. Defendants argue that this claim should be dismissed because plaintiffs have not supported it with an affidavit based on personal knowledge, rather than hearsay. *See*, Fed.R.Civ.P. 56(e). Plaintiffs concede that they are unable to provide an affidavit by Tolentino to support said claim, but argue that because Tolentino

---

16. The Court notes that this decision is consistent with its above discussion, which found supervisors to be not liable under ADEA as "employers" in part because it would be nonsensical for supervisors to pay wage damages or reinstate an employee.

17. Defendants in their motion for summary judgment attempt to treat each statement as a sepa-

rate claim, thereby creating five claims out of just one incident. As stated above, the Court finds that because defamation law deals with "publications," and because these five clauses appear to have been published at one time, by one person, and to one person, the Court shall treat them as one claim.

is a high ranking officer of corporate defendants, their statements should be admitted under the hearsay exception statement against interest. Fed.R.Ev. 804(b)(3). The Court holds in abeyance defendants' motion for summary judgment as against this claim pending the resolution of an evidentiary hearing to be held on the first day of trial in this case.

Plaintiffs' second defamation claim is based on statements made by Subirats to Sinanan that Flamand mismanaged funds and wrongfully gave economic advantages to employees under his supervision. In her affidavit, Subirats denied that she made these statements. Flamand in his affidavit states that Sinanan told him that Subirats did make these statements on her trip to Trinidad allegedly "to get dirt" on Flamand. Defendants argue that this claim should be dismissed because plaintiffs have not supported it with an affidavit based on personal knowledge, rather than hearsay. *See* Fed.R.Civ.P. 56(e). As with the above claim concerning statements allegedly made to Tolentino, plaintiffs concede that they are unable to provide an affidavit by Sinanan to support said claim, but argue that because Sinanan is a manager of corporate defendant AIG, Sinanan's statements should be admitted under the hearsay exception statement against interest. Fed. R.Ev. 804(b)(3). Again, the Court shall hold in abeyance defendants' motion as to this claim pending the evidentiary hearing.

■ Third, plaintiffs claim that Subirats stated that Flamand had deceived the company in order to obtain Home Leave Benefits. Subirats denies this allegation in her affidavit. Although Flamand claims that Subirats published this statement to other employees in his affidavit, his affidavit is not based on personal knowledge as required by Fed. R.Civ.P. 56(e). Moreover, plaintiffs do not supply an affidavit by anyone who actually heard the alleged defamatory statement. Nor do plaintiffs offer an explanation for said lack of support. *See,* Fed.R.Civ.P. 56(f). Indeed, plaintiffs do not even address this claim in their opposition to defendants' motion for summary judgment. Without providing proper affidavit support, plaintiffs have not demonstrated that there is a genuine issue of material fact. Therefore, the Court **grants** defendants' motion for summary judgment and shall dismiss the defamation claim based on Subirats' alleged statement that Flamand had deceived the Company in order to obtain Home Leave Benefits.

■ Fourth, plaintiffs claim defamation on the basis of Subirats alleged statement to Judith Hernandez that somebody was having an affair with Jackie Barros. Hernandez understood that statement to implicate Flamand as having the affair. Defendants move for summary judgment on this claim stating that because the statement is not "of and concerning the plaintiff" it is not actionable as defamatory. *Rosado v. Flour Int'l,* 81 P.R.R. 592, 598, 81 D.P.R. 608 (1959); *Garib Bazan v. Clavell,* 94 J.T.S. 36, p. 11681 (1994). In Hernandez' deposition, however, she states that she believed Subirats was referring to Flamand.

"A public defamation can be aimed at a person even when his name is not mentioned. In such a case, plaintiff has to allege and prove, by way of 'colloquium' that the defamatory charge refers to him." *Rosado,* 81 P.R.R. at 597–98. Here, plaintiffs show that Hernandez during her deposition stated that because she knew Subirats disliked Flamand, and because she knew that Flamand and Barros were close, Hernandez believed Subirats' statement referred to Flamand. The Court finds that plaintiffs have raised a genuine issue of material fact as to whether or not Subirats' statement was "of and concerning" Flamand. Therefore, the Court hereby **denies** defendants' motion for summary judgment as to Subirats' statement that a man in the office was having an affair with Barros.

[20] Fifth, plaintiffs' next defamation claim is based on Hammer's alleged statement to Hernandez that Flamand was having an affair with Barros. In Hammer's affidavit, he denies making said statement. In Hernandez' deposition, she states that he did make such a statement to her, but without specifying the name of the person with whom Barros was having an affair. Concerning this claim, however, plaintiffs have not submitted deposition testimony nor an affidavit

by Hernandez to support an inference that Hammer was referring to Flamand. *See id.* Therefore, the Court hereby **grants** defendants motion for summary judgement and dismisses plaintiffs' defamation claim that Hammer stated Flamand was having an affair with Barros.

 Sixth, plaintiffs claim that Hammer stated that Flamand deceived the Company in order to obtain home leave benefits. Although in his affidavit Flamand claims that Hammer published this statement to other employees, said affidavit is not based on personal knowledge as required by Fed.R.Civ.P. 56(e). Moreover, plaintiffs do not supply an affidavit by anyone who actually heard the alleged defamatory statement. Nor do plaintiffs offer an explanation for said lack of support or even address this claim in their Brief In Support Of Their Opposition. *See,* Fed.R.Civ.P. 56(f). Without providing proper affidavit support, plaintiffs have not demonstrated that there is a genuine issue of material fact. Therefore, the Court grants defendants' motion for summary judgment and shall dismiss the defamation claim based on Hammer's alleged statement that Hammer stated that Flamand had deceived the Company in order to obtain home leave benefits.

### 5. Other Claims

Hammer and Subirats state that the other claims raised by plaintiffs that also involve the corporate defendants should be dismissed as well. Because they have incorporated the arguments set forth in the corporate defendants' motion for summary judgment, the Court shall address said claims as they apply to defendants Subirats and Hammer at the same time that it discusses said claims as against the corporate defendants.

### B. Corporate Defendants' Summary Judgment Motion

Next, the Court shall address the issues raised in the corporate defendants' motion for summary judgment.

18. *See,* note 3 *infra.*

### 1. ADEA Claims in General

 Defendants first request summary judgment on plaintiffs' ADEA claims arguing that the claims are moot. Under ADEA, plaintiff may recover reinstatement, back wages, unpaid compensation, and liquidated damages, which permit successful plaintiffs to claim as liquidated damages an amount equal to the backpay and unpaid compensation liability.[18] On July 11, 1994, the Court issued an order stating that the "Court will strike any claim brought by plaintiffs related to backpay and/or loss of past or future income, and will preclude from trial any evidence that relates to backpay or loss of past or future income" because plaintiffs refused to produce their tax documents. Dkt. no. 127. On September 21, 1994, the Court clarified its previous order, and stated that plaintiffs could not bring a claim for home leave benefits. Dkt. no. 183. Therefore, defendants argue that even if plaintiffs were to win on the ADEA liability issue, plaintiffs could not be awarded backpay or unpaid compensation and, without said damages, plaintiffs could not be awarded liquidated damages, nominal damages, and attorney fees. Accordingly, defendants argue that because plaintiffs could not recover any damages, the ADEA claims should be dismissed as moot.

Plaintiffs argue that although Flamand is not claiming any loss of salary, compensation, nor for any period of unemployment, Flamand is claiming vacation days, home leave allowance, airfare allowance, emotional and mental anguish, loss of vested rights to his pension, damages for loss of his stock option plan, and liquidated damages. Plaintiffs state that under their retaliation claim, if they are able to prove liability, plaintiffs are entitled to emotional damages. *See Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 283–84 (7th Cir.1993) (stating without explanation that consequential damages are available if retaliation under ADEA).

The Court has struck plaintiffs' claims for backpay, frontpay, and home leave benefits. Nevertheless, plaintiffs are entitled to claim those wages, constituted by fringe benefits and deferred compensation, that are not

front or back pay. Specifically, plaintiffs may claim loss of vacation days, airfare allowance, loss of vested rights to pension, and loss of stock option plan. Plaintiffs may also claim liquidated damages. Therefore, finding that plaintiffs may claim said damages, the Court need not address defendants' argument that plaintiffs may not receive nominal fees or attorney fees, and hereby **denies** defendants' motion to dismiss plaintiffs' ADEA claim as moot.

■ However, despite plaintiffs' assertion that compensatory damages should be available under their retaliation claim, the First Circuit has held repeatedly that there are no compensatory damages available under ADEA, without distinguishing retaliation claims from disparate treatment claims. *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107, 112 (1st Cir.1978); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1022 (1st Cir.1979); *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir. 1982). The Court finds that due to the First Circuit's refusal to distinguish between the damages available under a retaliation ADEA claim and under a different ADEA claim, plaintiffs may not recover compensatory damages even in a retaliation claim.

### 2. Disparate Treatment Under ADEA

■ Defendants have divided plaintiffs' disparate treatment claim for failure to transfer, failure to promote and attempt to demote into separate claims. The Court finds that because plaintiffs are attempting to prove that corporate defendants did not promote or transfer plaintiff, and because plaintiffs are using the various vacancies to support said claim, these different examples do not set forth different claims. The Court does find that plaintiffs' allegation that defendants attempted to demote Flamand due to his age sets out a separate disparate treatment claim from the claim for failure to transfer or promote.[19]

■ In a failure to promote/transfer case under ADEA, plaintiff bears the ultimate burden of proving that he would have

been promoted or transferred but for his age. *See, Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 478 (1st Cir.1993). Absent direct evidence of intentional age discrimination, as is the case here, plaintiff may prove said discrimination through circumstantial evidence. A prima facie case of age discrimination for failure to promote/transfer is established if the plaintiff demonstrates that plaintiff is (i) within the protected age group, ie. over the age of forty, (ii) his work was sufficient to meet his employer's legitimate expectations, (iii) his employer failed to promote or transfer plaintiff to vacant positions, and (iv) the employer filled said vacancies with a person possessing roughly equivalent job qualifications, thereby showing a continued need for the same services or skills, or the position remained open. *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir.1994) (First Circuit has never required the showing in step four that it be a younger person); *Mesnick v. General Elec. Co.*, 950 F.2d 816 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). This showing raises the inference that plaintiff was discriminated against on the basis of his age.

■ Defendants dissect plaintiffs' claim for failure to transfer/promote into separate claims for each vacant position in Chile, Sao Paulo, Brazil, and Mexico, and ask the Court to enter summary judgment as against the Chile and the Mexico claim. Defendants argue that plaintiffs have not established step four of the prima facie case because the position in Chile was abolished, and defendants did not control the position in Mexico.

The Court hereby **denies** defendants' motion for summary judgment on the Mexico and Chile "claims" because these vacant positions are *examples* of defendants' alleged disparate treatment on the basis of plaintiff's age, but do not constitute separate claims. In the same light, defendants cannot preclude plaintiffs from using examples of other positions, on the grounds that a specific position was not included in plaintiffs' specification of claims. Such positions are examples

---

**19.** Defendants have not moved for summary judgment on plaintiffs' claim against defendants for attempting to demote Flamand.

of the claim that has existed since the filing of this action: failure to transfer/promote. Additionally, it has not gone without the Court's notice that due to defendants' refusal to produce information regarding vacant positions, plaintiffs may not have obtained information to provide as examples for this failure to promote/transfer claim until after plaintiffs submitted their specification of claims.

Moreover, the Court finds that plaintiffs have provided enough facts, which are supported by affidavits, to raise a genuine issue of fact as to whether they can establish a prima facie case of age discrimination. As defendants do not argue for summary judgment on the basis of any other reason than plaintiffs' failure to establish a prima facie case, the Court hereby **denies** defendants' motion for summary judgment as to plaintiffs' failure to transfer/promote claim.

### 3. Constructive Discharge Under ADEA, Law 100, and Law 80

Plaintiffs also claim that Flamand was constructively discharged from his employment with AIU Caribbean. Plaintiffs allege that Flamand was subjected to a continuous pattern of actions that made his working conditions intolerable, such as a deprivation of any transfer or promotion, Hammer's false allegations that there were no vacant positions available, progressive reduction of Flamand's responsibilities and scope of Flamand's functions, bypassing of Flamand in decision-making, failure to provide Flamand with necessary information, denial of managerial flexibility, pressure to accept a position with a reduction in pay and responsibility, and constant comments that the company might be closing down the Caribbean operation. Defendants claim that Flamand never felt compelled to leave his employment and therefore, without a subjective belief that his work environment was intolerable, Flamand cannot maintain a constructive discharge action.

 The standard for proving constructive discharge is that "the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled

to resign." *Aviles–Martinez v. Monroig*, 963 F.2d 2, 6 (1st Cir.1992) (quoting *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986)). "This is an 'objective standard' ... in which the focus is upon the 'reasonable state of mind of the putative discriminate.' " *Id.* (citations omitted). Under Puerto Rico law, plaintiff must prove that the employee's only reasonable alternative is to leave his employment. *Reilova v. R. Palmer Bros., Inc.*, 94 P.R.R. 166, 169 (1967) (interpreting Law 50, 29 L.P.R.A. § 183, repealed May 30, 1976).[20] It is not disputed that plaintiff did indeed leave his work. In addition, Flamand claims that he left because he felt that his working conditions had become intolerable, and because of the allegations listed above describing allegedly hostile actions that occurred continuously through the time of Flamand's leaving. With these factual allegations, plaintiffs have raised a genuine issue of material fact as to Flamand's motivations for leaving and whether the working conditions had become so intolerable that a reasonable person would feel compelled to resign rather than submit to "looming indignities." *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir.1993). Accordingly, the Court hereby **denies** defendants' motion for summary judgment as to plaintiffs' constructive discharge claim under ADEA, Law 100, and Law 80.

### 4. Retaliation Claim Under ADEA and Law 100

Plaintiffs claim that after Flamand charged defendants with discriminating against him on the basis of age and after he filed his age discrimination claim, defendants retaliated against Flamand. Defendants move for summary judgment stating that defendants' filing of a collection action against Flamand does not constitute retaliation because defendants notified plaintiff that they would file said action long before plaintiffs filed their discrimination charge on February 2, 1992.

 Under ADEA, it is unlawful "for an employer to discriminate against any of his employees ... because such individual ...

---

**20.** Law 50 is the predecessor to Law 80, which is at issue in this case.

has opposed any practice made unlawful by this section, or because such individual ... has made a charge, ... or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). To prove retaliation, plaintiff must show (1) he engaged in protected activity, (2) he was subsequently retaliated against, and (3) that there is a causal connection between the retaliation and the protected activity. *Mesnick*, 950 F.2d at 827.

■ Plaintiffs claim that Flamand first engaged in protected activity when, in the late summer of 1989, Flamand refused to transfer to New York because he believed that in the New York position he would receive less compensation and responsibility than his younger predecessor and that defendants were discriminating against Flamand on the basis of age. Plaintiffs give examples of alleged acts of retaliation taken against Flamand after said refusal, such as Hammer's threatening that Flamand's refusal to transfer would negatively affect Flamand's future in the company, the failure to pay Flamand accrued vacation, the failure to pay him severance, the withholding Flamand's August 15, 1991 pay check, the accusing Flamand of deceiving the company, and the filing of the collection action. In addition, although defendants did send Flamand letters warning him that the company would file a collection action, plaintiffs claim that defendants eventually filed the collection action only in retaliation to and just after Flamand's filing of his age discrimination action.

The Court finds that plaintiffs have produced enough facts to raise a trial-worthy issue as to whether or not plaintiffs engaged in two separate ADEA protected activities: (1) complaining of age discrimination and (2) filing an age discrimination action. Therefore, the Court finds that there is a genuine issue of material fact as to whether defendants' alleged retaliatory conduct occurred subsequent to plaintiffs' protected activity, and the Court hereby **denies** defendants' motion for summary judgment as to plaintiffs' claim for retaliation under ADEA and Law 100.

### 5. Defamation Claims

As to corporate defendants' motion for summary judgment as to plaintiffs' defamation claims, the Court incorporates herein its above discussion of said claims in reference to the individual defendants' motion for summary judgment.

### 6. Abuse Of Process Claim

Plaintiffs are asserting a claim for abuse of process and/or wrongful prosecution concerning a collection lawsuit filed by defendants against Flamand. Defendants argue that said claim is a malicious prosecution action under the common law and exists only under exceptional circumstances equal to the repeated filing of frivolous civil actions. *Fonseca v. Oyola*, 77 P.R.R. 496, 499 (1954). Because such circumstances do not exist in this action, defendants have moved for summary judgment.

■ Plaintiffs state that their action is under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, and not under the common law action of malicious prosecution. Article 1802 provides "A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141. Accordingly, under said section, a plaintiff must prove (i) damage suffered, (ii) a causal connection between the action or omission by defendant, and (iii) that said act or omission was negligent or wrongful. *Berrios v. International Gen. Elec.*, 88 P.R.R. 106, 115 (1963). The First Circuit has found that a case for abuse of process or wrongful prosecution in Puerto Rico "should be considered under the standard of Article 1802, the general tort provision of the Civil Code of Puerto Rico, and not according to standards set under the common law rubric of 'malicious prosecution.'" *Reyes–Cardona v. J.C. Penney Co.*, 694 F.2d 894, 896 (1st Cir.1982). This Court, following the law of this circuit, holds that Article 1802, and not the common law of malicious prosecution, is the applicable law to plaintiffs' abuse of process claim. Because defendants only argued for the dismissal of this claim through the application of malicious prosecution common law, the Court hereby **denies** defendants' summary judgment motion as to plaintiffs'

abuse of process claim as it is actionable under Article 1802.

## C. Defendants' Joint Motion For Summary Judgment

Defendants have also filed a motion entitled Joint Motion For Partial Summary Judgment, dkt. no. 69. In said motion, defendants argue that this Court should dismiss the failure to transfer claim under ADEA and Law 100. As stated above in the discussion concerning defendants' later motion for summary judgment,[21] the Court finds that plaintiffs' have raised genuine issues of material fact as to plaintiffs' failure to transfer/promote claim. Therefore, the Court declares this motion to be **moot**.

Defendants also argue that plaintiffs' constructive discharge claim should be dismissed because plaintiff cannot prove that he felt "compelled to resign." Again, this Court finds this motion to be **moot** as to the constructive discharge claim as the Court has in this same opinion and order held that plaintiffs' have raised a genuine issue of material fact concerning this claim.

Defendants further contend that plaintiffs' retaliation claim as to harassment by a process server must be dismissed. The Court shall not divide plaintiffs' retaliation claim into numerous claims for each example of alleged retaliation. Because plaintiffs have offered the alleged harassing actions by the process server to support their retaliation claim, the Court may not dismiss this example supporting their claim, as it is not a claim for retaliation in and of itself. Therefore, the Court shall **deny** defendants' motion requesting dismissal of plaintiffs' supposed retaliation claim based on the actions of the process server.

Concerning defendants' argument that the retaliation claim should be dismissed because any actions initiated before plaintiffs' filing of this 1992 action cannot be considered as retaliation, the Court declares this argument **moot** as the Court has already held that plaintiffs have raised a trial-worthy issue of fact that Flamand engaged in ADEA-protect-

ed activity starting in the late summer of 1989.

## D. Defendants' Motion To Dismiss Defamation Claim

Defendants have also filed a joint motion to dismiss the defamation claim, dkt. no. 70. This motion, filed on April 26, 1993, was filed prior to plaintiffs' Specification of Claims, which was filed on July 27, 1994, dkt. no. 142. In this motion, defendants move for dismissal because plaintiffs' have not specified the allegedly defamatory statements. Therefore, as to said argument the Court declares it **moot**. As evidenced by the previous discussion of plaintiffs' defamation claims,[22] it is clear that since the filing of this motion, plaintiffs have specified their claims.

Defendants also move for dismissal of the defamation claims as against defendant Hammer. Defendants argue that because plaintiffs do not claim Hammer made any of the allegedly defamatory statements, these claims should be dismissed as against him. The Court declares this argument to be **moot** as well as due to plaintiffs' specification of claims, which alleges that Hammer made defamatory statements.

## E. Defendants' Motion to Dismiss and/or Summary Judgment

In plaintiffs' Specification of Claims, dkt. no. 142, plaintiff Mendez Ondina is claiming damages for ADEA and Law 100 violations. She is also claiming damages for defendants' alleged defamatory statements, to the extent the applicable law allows her to recover damages for defamatory statements made against her husband, their family name, and reputation, and for defamatory statements made against Mendez Ondina, as wife of Flamand. Plaintiff Mendez Ondina also claims damages as Flamand's wife and for the conjugal partnership constituted between them for breach of Flamand's employment contract, in particular for home leave benefits and accrued vacations, and for the breach of his severance contract. Finally, Mendez Ondina claims damages for the mental anguish and sufferings of her husband caused by defendants' tortious and negligent filing and prosecuting

---

21. *See* section B *infra.*

22. *See* section A *infra.*

of the collection action against Flamand and by defendants' negligent and intentional infliction of emotional distress.

■ Defendants move to dismiss plaintiff Mendez Ondina's ADEA, Law 100, and Law 80 claims for lack of standing. Plaintiff opposes said motion. Plaintiff Mendez Ondina and the conjugal partnership were never actual employees of defendants. And as held previously by this Court, a spouse and a conjugal partnership do not have standing under ADEA and Law 100 because they do not meet the description of an "employee" or of an individual who may bring suit under the statutes. *See*, 29 U.S.C. §§ 623, 626(c)(1); 29 L.P.R.A. § 146; *Santini Rivera v. Serv Air, Inc.*, 94 J.T.S. 121 (1994) (family members and third parties may not bring suit under Law 100 if they were not the employees that suffered the discrimination); *Rosario Nevarez v. Torres Gaztambide*, 633 F.Supp. 287, 299 (D.P.R.1986) (under § 1983, a person may not bring suit for the violation of another's constitutional rights), *rev'd on other grounds*, 812 F.2d 525 (1st Cir.1987).[23] Accordingly, this Court **grants** defendants' motion to dismiss and shall dismiss plaintiff Mendez Ondina's ADEA and Law 100 claim. In the same vein, as Law 80 also provides a cause of action for "employees" only, the Court **grants** defendants' motion and shall dismiss plaintiff Mendez Ondina's Law 80 claim as well. *See*, 29 L.P.R.A. § 185a.

■ Defendants also claim that plaintiff Mendez Ondina and the conjugal partnership lack a cause of action in tort for the alleged defamatory and retaliatory acts against Flamand and Mendez Ondina by defendants. Defendants state that even if plaintiffs were able to prove said actions, only Flamand could recover damages for them because said actions relate to only Flamand. Plaintiffs oppose defendants' motion, stating that Mendez Ondina during her deposition described alleged defamatory statements that were not only against Flamand but also Mendez Ondina. For example, plaintiffs state that the defamatory statements concerning Flamand's alleged affair imputed Mendez Ondina as his wife. Due to these statements, plaintiff Mendez Ondina alleges that she has suffered damages.

■ Under Article II, § 8 of the Constitution of Puerto Rico, "[e]very person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." *See*, *Porto v. Bentley Puerto Rico, Inc.*, 92 J.T.S. 175, p. 10247 (1992); *Pujol v. Shearson/American Express*, 829 F.2d 1201, 1208 (1st Cir.1987); *Lopez–Pacheco v. United States*, 627 F.Supp. 1224, 1228 (D.P.R.1986) (Article II, § 8 protects the right to privacy "within the home and within intimate family and personal relationships") *aff'd without published opinion*, 815 F.2d 692 (1st Cir.1987). A defamatory statement, in order to state a claim, must be "specifically of and concerning" the plaintiff. *Flotech, Inc. v. E.I. DuPont de Nemours & Co.*, 814 F.2d 775, 778 n. 3 (1st Cir.1987). The Court finds that plaintiffs have not stated a claim that statements about Flamand's alleged affair are "of and concerning" Mendez Ondina. They are "of and concerning" Flamand, but not of his wife. Therefore the Court shall **grant** defendants' motion to dismiss as to

---

**23.** *See also Barreto v. H.F. Mortgage Bankers*, Case No. 92–1613 (HL) (D.P.R. Aug. 26, 1992) (stating "A conjugal partnership has no independent standing to sue under ADEA because it is not an 'employee' within the meaning of the ADEA. *Paredes Figueroa v. Int. Air Serv. of Puerto Rico*, 662 F.Supp. 1202 (D.P.R.1987). Plaintiff's spouse lack's standing to sue under the ADEA for the same reason. *Zavala v. G.D. Searle & Co.*, 1991 WL 128222 (D.P.R.1991). In *Zavala*, the Court also denied standing to a wife and conjugal partnership under Law 100. *Id.*, 1991 WL 128222, *4. We follow the court's reasoning in that case, and similarly hold that plaintiff's wife and conjugal partnership lack standing to prosecute this claim under Law 100.").

It should be noted that the Puerto Rico Supreme Court has recently held that family members of an employee bringing suit under Law 100 may bring an action under Article 1802 for damages suffered due to the employer's discrimination against the employee. *Santini Rivera v. Serv Air, Inc.*, 94 J.T.S. 121 (1994). In the case at hand, plaintiff is bringing an action under Article 1802 for negligent and tortious actions, which includes the defendants' conduct towards Flamand "that went beyond Flamand's constructive dismissal." Plaintiff's Specification of Claims. Defendants' motion to dismiss and/or summary judgment does not address said Article 1802 claim, and therefore this Court shall not address same in this Opinion and Order.

plaintiff Mendez Ondina's claim for defamation due to statements about herself.

██ Under Article 1802, an individual can recover damages for the specific defamation of a spouse. *La Sociedad Legal de Gananciales de Carlos O. Rodriguez v. El Vocero de Puerto Rico, Inc.,* 94 J.T.S. 13 (1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2744, 129 L.Ed.2d 863 (1994). Therefore, the Court finds that plaintiff Mendez Ondina has stated a claim for damages based on the allegedly defamatory statements made against her husband Flamand. Accordingly, defendants' motion is hereby **denied** as to said defamation claim.

**WHEREFORE,** the Court hereby grants in part and dismisses in part defendants' various motions for summary judgment and motions to dismiss. The Court hereby dismisses with prejudice the following claims: (1) Plaintiff's ADEA claims against defendant Hammer and Subirats, (2) plaintiffs' Law 80 severance pay claim as against defendants Hammer and Subirats, (3) plaintiffs' breach of contract claim for severance pay as against Hammer and Subirats, (4) plaintiffs' defamation claim based on Subirats' alleged statement that Flamand had deceived the company in order to obtain home leave benefits, (5) plaintiffs' defamation claim based on Hammer's alleged statement that Flamand was having an affair with Barros, (6) plaintiffs' defamation claim based on Hammer's statement that Flamand had deceived the company in order to obtain home leave benefits, and (7) plaintiff Mendez Ondina's defamation claim for statements allegedly made about herself. The Court holds in abeyance defendants' motion as to plaintiffs' defamation claims involving statements allegedly made by Subirats to Tolentino and Sinanan.

IT IS SO ORDERED.