Fred ROBINS, Plaintiff,

v.

MAX MARA, U.S.A., INC., Max Mara Fashion Group, SpA, Joseph Picone, Julia Kaferstein, Orsetta Mantovani, Luigi Maramoti, and Fernando Fornaciari, Defendants.

No. 75937.

United States District Court, S.D. New York.

Jan. 17, 1996.

Arthur M. Wisehart, Wisehart & Koch, New York City, for plaintiff.

James S. Frank, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendants.

## AMENDED OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. Facts

Plaintiff Fred Robins ("Robins") was hired by Defendant Max Mara U.S.A., Inc. ("Max Mara USA") as a vice president in January 1987. Amended Complaint ("Am.Cplt.") ¶ 14; Affidavit of John Gleeson, Treasurer of Max Mara USA ("Gleeson Aff.") ¶ 6. Max Mara USA is a Delaware corporation that imports and sells women's designer clothes and accessories. It is also a wholly owned subsidiary of Defendant Max Mara Fashion Group, SpA ("Fashion Group"), a corporation organized under the laws of Italy. Gleeson Aff. ¶ 2; Am.Cplt. ¶ 9. Plaintiff and Defendants agree that Robins' employment with Max Mara USA was terminated as of January 1, 1993. Am.Cplt. ¶ 34; Gleeson Aff. ¶ 6. However, Robins contends that because of his age, medical history, and national origin, Defendants denied him top positions in the company, reduced his responsibilities, interfered with the performance of his duties, and ultimately conspired to and did terminate his employment. Am.Cplt. ¶¶ 44, 45, 47, 52, 59.

The remaining Defendants in this action include Luigi Maramoti, the president of Fashion Group and a director of Max Mara USA (Am.Cplt. ¶¶ 15, 18); Joseph Picone, Max Mara USA's chairman and CEO until March 31, 1992 (Gleeson Aff. ¶ 4); Fernando Fornaciari, president of Max Mara USA beginning January 31, 1992 and an officer of Fashion Group (Gleeson Aff. ¶ 4; Am.Cplt. ¶ 19); Orsetta Mantovani, a sales and merchandising employee of Max Mara USA and/or Fashion Group (Am.Cplt. ¶ 8); and Julia Kaferstein, a sales merchandising executive of another wholly owned subsidiary of Fashion Group (Am.Cplt. ¶ 7).

Robins has sued Defendants for employment discrimination, breach of contract, tortious interference with contract, and violations of 42 U.S.C. §§ 1985(3) and 1986, which impose liability for conspiring to deprive a person of the equal protection of the laws and for failing to prevent such a conspiracy. Robins' employment discrimination claims are based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (West 1985 & Supp.1995); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. (West 1995); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (West 1994); the Human Rights Law of the State of New York ("NYHRL"), N.Y.Exec.Law § 296 (McKinney 1993); the Human Rights Law of the City of New York ("NYCHRL"), N.Y.C.Admin.Code § 8–502 (N.Y. Legal Publishing Corp. 1995); and the New Jersey Law Against Discrimination ("NJLAD"), N.J.Stat. Ann. § 10:5–12 (West 1995). Defendants now move to dismiss Robins' amended complaint, filed on October 12, 1993.

### II. Motion to Dismiss

Defendants offer numerous grounds in support of their motion to dismiss. However, as shown below, consideration of two of those grounds—lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and failure to state a claim under Rule 12(b)(6)—makes consideration of the other arguments unnecessary.

■ When a party moves to dismiss a complaint for lack of subject matter jurisdiction, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *see also Dewey v. PTT Telecom Netherlands, U.S., Inc.,* 94 Civ. 5983, 1995 WL 425005 at *1 (S.D.N.Y. July 19, 1995). Both Plaintiff and Defen-

dants have supplemented the record with affidavits in this case. "[T]his supplementation does not convert the motion into a Rule 56 summary judgment motion." *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986). Thus the pleadings, affidavits and memoranda of law have all been considered.

### III. *Jurisdiction Over Discrimination Claims*

#### A. *Burden of Proof and Jurisdictional Requirements*

█ It is well established that the "burden of proving jurisdictional prerequisites lies on the party who seeks the exercise of jurisdiction in his favor." *Kheel v. Port of New York Authority,* 457 F.2d 46, 48 (2d Cir.), *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *Fulani v. Brady,* 809 F.Supp. 1112, 1118 (S.D.N.Y. 1993), *aff'd,* 35 F.3d 49 (2d Cir.1994). Defendants contend that Plaintiff's federal discrimination claims should be dismissed because the Court lacks subject matter jurisdiction over those claims. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def.Mem.") at 5. Each of the three federal anti-discrimination statutes under which Robins is suing applies only to employers who have a certain minimum number of employees. Under Title VII, the minimum number of employees is fifteen; under the ADEA, an employer must have twenty employees before it is covered by the law; and under the ADA, only employers with at least

twenty-five employees are bound by the law. *See* 42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b); 42 U.S.C. § 12111(5)(A).[1]

Robins was an employee of Max Mara USA. Am.Cplt. ¶ 14. According to Defendants, Max Mara USA employed fourteen or fewer people for 46 weeks in 1991 and for 41 weeks in 1992. Def.Mem. at 5 (citing Gleeson Aff. ¶ 5).[2] Robins does not dispute these numbers. Rather, he argues that Max Mara USA and Fashion Group constitute an integrated enterprise, which would normally allow a plaintiff to aggregate the number of employees of the enterprise's components in order to meet jurisdictional requirements.

#### B. *Meeting Jurisdictional Requirements through a Finding that Corporations Constitute an Integrated Enterprise*

█ In the Second Circuit, "two or more formally distinct entities may be so interrelated that they are treated as a single employer for the purposes of anti-discrimination law." *Regan v. In the Heat of the Nite, Inc.,* 93 Civ. 862, 1995 WL 413249, at *2–3 (S.D.N.Y. July 12, 1995); *see also Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240–41 (2d Cir.1995). A parent and subsidiary may be considered an integrated enterprise if there is sufficient evidence of (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Cook,* 69 F.3d at 1240–41 (citing *Armbruster v. Quinn,* 711 F.2d 1332, 1337 (6th Cir.1983)). Upon sufficient evidence, courts will consider separate business

---

1. The minimum number of employees required for an employer to be covered by the ADA decreased to fifteen after July 26, 1994. 42 U.S.C. § 12111(5)(A).

2. The years 1991 and 1992 are relevant because applicability of the statutes is determined by the number of employees in the current or preceding calendar years. *See, e.g.,* 29 U.S.C. § 630(b). The current year is the year in which the alleged unlawful practice occurred. *Weber v. George Cook, Ltd.,* 563 F.Supp. 598, 599 n. 1 (S.D.N.Y. 1983). Max Mara USA informed Robins in June 1992 that his employment contract would be terminated at the end of 1992. Gleeson Aff. ¶ 8, Ex. E. In November 1992, Max Mara USA informed Robins that his employment would be terminated as of January 1, 1993. Gleeson Aff.

¶ 10, Ex. G. Robins claims that he was unlawfully terminated. Am.Cplt. ¶ 59. Although his termination became effective on January 1, 1993, the alleged unlawful conduct—making the decision to terminate his employment, and notifying Robins of that decision—occurred in 1992. Therefore, the current calendar year was 1992, and the preceding calendar year was 1991. Those are the relevant years for the purpose of determining whether Max Mara USA had the required minimum number of employees. Further, the number of weeks is relevant because each statute at issue requires that an employer have the minimum number of employees for 20 or more calendar weeks in the current or preceding calendar year. 29 U.S.C. § 630(b); 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A).

entities to be an integrated enterprise for the purpose of determining whether the enterprise comes within the definition of an employer under the federal anti-discrimination laws. *See Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582 (7th Cir.1993). Consequently, Robins argues, the number of Max Mara USA's employees must be added to the number of Fashion Group's employees in determining whether the combined Max Mara USA/Fashion Group entity has enough employees to come within the ambit of Title VII, the ADEA, and the ADA. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.Mem.") at 4; Affidavit of Fred Robins ("Robins Aff.") ¶¶ 4, 12.

### C. Whether or Not Max Mara and Fashion Group Are an Integrated Enterprise, Plaintiff Has Not Met the Jurisdictional Requirements

▮ The Court need not decide whether Max Mara USA and Fashion Group constitute an integrated enterprise. If they are not an integrated enterprise, then Plaintiff may not sue under the federal anti-discrimination laws because Max Mara USA does not have the minimum number of employees required for it to be covered by the laws. Gleeson Aff. ¶ 5. However, even if Max Mara USA and Fashion Group are an integrated enterprise, two factors still preclude Robins from suing under the federal anti-discrimination laws. First, the integrated enterprise (assuming one exists) is controlled by Fashion Group, an Italian company. Robins Aff. ¶¶ 33, 47, 49, 66. Second, Fashion Group did not have any employees in the United States for 20 weeks or more in either 1991 or 1992. The role of these factors is discussed below.

### 1. Exemptions for Foreign Companies

The anti-discrimination statutes contain certain exemptions for foreign employers. "The prohibitions of [the ADEA] shall not apply where the employer is a foreign person not controlled by an American employer."

29 U.S.C. § 623(h)(2). Further, Title VII and the ADA do "not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer." 42 U.S.C. §§ 2000e–1(c)(2), 12112(c)(2)(B). This language has been held to mean that "the relevant group for purposes of [Title VII] [is] the foreign corporation's employees in the United States, not its global total of employees." *Rao v. Kenya Airways, Ltd.*, 94 Civ. 6103, 1995 WL 366305, at *2 (S.D.N.Y. June 20, 1995).

### 2. Treatment of Integrated Enterprises Comprising Foreign and Domestic Components

Neither the Court nor the parties have located any decisions in which a court, faced with an employee attempting to support an assertion of jurisdiction by aggregating the number of employees, found that a domestic company and a foreign company constituted an integrated enterprise.[3] The question, then, appears to be one of first impression. If an integrated enterprise (comprising foreign and domestic components) is controlled by the foreign component, then that enterprise shall be treated as a foreign company for the jurisdictional purposes of the anti-discrimination statutes. Robins thus "may not ... include defendant's foreign employees in calculating defendant's total number of employees." *Rao*, 1995 WL 366305 at *2. Only those employees of the enterprise (whether on the payroll of the foreign or the domestic component) who work in the United States for twenty or more calendar weeks per year are to be counted for purposes of determining whether the enterprise is covered by the provisions of the ADA, ADEA and Title VII.

### 3. Application to Max Mara and Fashion Group

Despite more than 18 months of discovery, Robins has not shown that Fashion Group had any employees in the United States for 20 weeks or more during either 1991 or

---

**3.** *Cf. Mochelle v. J. Walter Inc.*, 823 F.Supp. 1302 (M.D.La.1993), *aff'd*, 15 F.3d 1079 (5th Cir. 1994), in which a federal district court faced a similar situation but found that the two companies (one American, the other Canadian) did not constitute a joint employer. Though different circuits use different terminology, the joint employer doctrine appears conceptually the same as the integrated enterprise doctrine.

1992.[4]  Because of this absence of employees in the United States for a sufficient length of time, and because "foreign employees of a foreign corporation are not considered employees for purposes of the [anti-discrimination laws]," *Rao*, 1995 WL 366305 at *2, a finding that Max Mara and Fashion Group are an integrated enterprise would not help Robins reach the jurisdictional minimum number of employees.  Consequently, Robins has not met his burden of proving the prerequisites to the exercise of this Court's jurisdiction over his discrimination claims.

### IV.  *Jurisdiction Over Claims Under 42 U.S.C. §§ 1985(3) and 1986*

■  Defendants contend that Robins has failed to state a claim under 42 U.S.C. §§ 1985(3) and 1986 because all of the alleged conspirators are members of the same entity and because "their alleged wrongful acts were committed while acting within the scope of their employment."  Def.Mem. at 17.  In the context of actions under 42 U.S.C. § 1985(3), the Second Circuit applies "the familiar doctrine that there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."  *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978).  *See also Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66, 70–71 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir.1972); *Rini v. Zwirn*, 886 F.Supp. 270, 291–92 (E.D.N.Y.1995).

■  Despite Plaintiff's attempt through his Memorandum to avoid the application of this principle, Defendants were clearly acting in the scope of their employment.  Robins contends that Defendants "were driven by deep personal malice against plaintiff ... which transcended the bounds of their duty as officers and directors of their respective corporations."  Pl.Mem. at 15.  However, under New York law, conduct that "in some way further[s] the interest of the employer, and [does] not solely benefit the employee" is considered to be within the scope of employment.  *See In re Ivan F. Boesky Sec. Litig.*, 36 F.3d 255, 265 (2d Cir.1994).  Employee conduct falls within the scope of employment unless the "conduct is brought on by a matter wholly personal in nature, the nature of which is not job-related."  *Stavitz v. City of New York*, 98 A.D.2d 529, 531, 471 N.Y.S.2d 272 (1st Dep't 1984); *see also Longin v. Kelly*, 875 F.Supp. 196, 202 (S.D.N.Y.1995) (citing *Stavitz* ).

In the instant case, for example, Robins states that Defendants Fornaciari (President of Max Mara USA), Maramoti (President of Fashion Group) and the corporate Defendants "instigated or approved the discriminatory actions and age bias of defendants Kaferstein and Mantovani."  Am.Cplt. ¶ 54.  Robins further alleges that Defendant Picone (former chairman and CEO of Max Mara USA) was induced by Fashion Group and Maramoti to "approve the interference with and violation of the commitments and agreements that defendant Picone had made to plaintiff."  Am.Cplt. ¶ 112.  Assuming that the allegations are true, the conduct of the individual Defendants in some way furthered the interests of their employers.  Defendants were thus acting within the scope of their employment, and therefore the Court need not decide whether the alleged conspirators were members of a single entity.  Plaintiff's actions under 42 U.S.C. §§ 1985(3) and 1986 are dismissed for failure to state a claim

---

**4.**  After the motion to dismiss was fully briefed, the Court requested additional information from the parties to aid in the determination of whether jurisdiction exists.  The Court asked the parties to identify any and all employees on the payroll of Max Mara Fashion Group, SpA who worked in the United States for 20 or more calendar weeks during both 1991 and 1992.  Plaintiff responded that he could not answer the questions because he does not have access to the payroll records of Fashion Group.  Plaintiff's Memorandum of Law in Response to Court's Order of November 30, 1995 at 1.  Defendants' attorney responded that, based on his review of the corporate defendants' business records, it appeared that no such employees worked in the United States for 20 or more calendar weeks during either 1991 or 1992.  Affidavit of Steven M. Post, Attorney for Defendants, December 28, 1995, ¶ 2.

upon which relief may be granted.[5]

## V. *Conclusion*

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to Plaintiff's claims under Title VII, the ADA, the ADEA, and 42 U.S.C. §§ 1985(3) and 1986. The state law claims will be addressed in a separate opinion.

SO ORDERED.

---

**5.** Section 1986 claims derive from claims under § 1985(3), in that the existence of a conspiracy under § 1985(3) is a prerequisite to suing under § 1986. Thus the dismissal of the § 1985(3) claim mandates the dismissal of the § 1986 claim.