**Eric Rodriguez MORENO, Plaintiff,**

v.

**JOHN CRANE, INC., et al., Defendants.**

**Civil No. 95–1112(SEC).**

United States District Court,
D. Puerto Rico.

March 31, 1997.

---

Mary Jo Mendez–Vilella, Río Piedras, PR, for Plaintiff.

Juan R. González–Muñoz, González Muñoz & Quiñones Tridas law Offices, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court on John Crane Inc.'s ("JCI") and Nestor Dávila's separate motions to dismiss (**Dockets # 10, 23**), which were duly opposed (**Docket # 17, 25**). JCI contends that the complaint against it should be dismissed for (a) insufficiency of process; (b) lack of personal jurisdiction; and (c) failure to state a claim upon which relief may be granted. Its motions all rest upon the premise that JCI is separate and independent from John Crane Caribe ("JCC"), the corporation whose actions are being challenged in this Court.

Defendant Nestor Dávila, on the other hand, essentially asserts that plaintiff has failed to state a claim upon which relief may be granted because as his employer's agent, he cannot be held individually liable either under the Americans with Disabilities Act ("ADA"), nor under the Puerto Rico Workers' Compensation Act ("PRWCA"). Upon careful examination of the relevant facts, the applicable law and the arguments advanced by both parties, the Court finds that defendants' motions to dismiss should be **GRANTED.**

### Motion to Dismiss Standard

It is a well-established principle that "[w]hen a party moves to dismiss a complaint for lack of subject matter jurisdiction, 'the

court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'" *Robins v. Max Mara, U.S.A.. Inc.,* 914 F.Supp. 1006, 1007 (S.D.N.Y.1996). "[T]his supplementation does not convert the motion into a Rule 56 summary judgment motion." *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986).

It is the plaintiff who "bears the ultimate burden of demonstrating that personal jurisdiction over the defendant exists by a preponderance of the evidence, but [he] need only make a prima facie showing when the court restricts its review of the Rule 12(b)(2) motion solely to affidavits and other written evidence and without the benefit of an evidentiary hearing." 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1351 (1996 Supp.). *See also, Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7, 8 (1st Cir.1986).

Rule 12(b)(6) motions, on the other hand, must be examined in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to assert "a short and plain statement of the claim showing that [it] is entitled to relief." 5A Wright & Miller, *supra,* at § 1356. It has been argued that "only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6)." *Id.* Given the forgoing standard, in examining a Rule 12(b)(6) motion, courts must construe the complaint in the light most favorable to the plaintiff and assume that its allegations are true, drawing all reasonable inferences in plaintiff's favor. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990).

Courts have considerable discretion, under the liberal pleading standard of the Federal Rules of Civil Procedure, to decide when a complaint is formally insufficient and thus, subject to dismissal. Although the Court will not credit bald assertions or mere specious allegations, it will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80

(1957); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991).

## Procedural Background

Plaintiff Eric Rodríguez Moreno ("Rodríguez") worked as a sales coordinator at JCC from 1990 until 1994, when he was allegedly dismissed because of his disability. (**Docket # 17, Exhibit 1**) Rodríguez asserts that on February 7, 1994, he injured his back while at work and had to report to the State Insurance Fund, where he was diagnosed with a strained back and two bulging discs. The Fund later determined that the had a twenty-five percent (25%) partial permanent disability. (**Docket # 1**) Two months later, he was allowed to go back to work, for which reason he requested reinstatement at JCC.

According to Rodríguez, when he asked to be placed at his old position, co-defendants: "with full knowledge of the physical disability [he] suffered, ... reassigned [him] to janitorial and warehouse duties, notwithstanding his pleas that he was physically unable to perform those duties." *Id.* Upon learning of co-defendants' decision, plaintiff sought legal advice from the State Insurance Fund. According to Rodríguez, co-defendant Néstor Dávila retaliated by summarily dismissing him.

Shortly thereafter, plaintiff filed two simultaneous disability discrimination complaints against co-defendants with the Anti–Discrimination Unit of the Puerto Rico Department of Labor and the United States' Equal Employment Opportunity Commission. Once both agencies granted plaintiff "right to sue" letters, he filed the instant complaint.

## Applicable Law/Analysis

### A. JCI's Motion to Dismiss

JCI is a corporation organized under the laws of the state of Delaware with its principal place of business in Morton Grove, Illinois. It is the parent company of JCC, a corporation organized under the laws of the state of Nevada with its principal place of business in Puerto Rico. Plaintiff was hired by co-defendant Néstor Dávila, JCC's general manager, on January of 1990. (**Docket # 25, Exhibit 2**).

■ At the time that the alleged unlawful practice occurred, JCC had less than the minimum number of employees required for an employer to be subject to the ADA.[1] Nevertheless, plaintiff asserts that JCC is in fact subject to the pertinent provisions of ADA because JCI and JCC constitute an "integrated enterprise."[2] Under this theory, the Court is allowed to aggregate the number of employees which comprise the enterprise in order to meet the jurisdictional requirement.

In its motion to dismiss, JCI alleges that JCC is a separate and independent entity and that therefore, plaintiff lacks subject matter jurisdiction over JCI. Since plaintiff does not contend that JCI has any independent contacts with the forum state, the issue before the Court is limited to whether JCI controls JCC's operations to such an extent that the latter's actions should be attributable to JCI. *Id.*, 960 F.2d at 1091.

Ordinarily, [t]here is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1980). Even though the First Circuit has expressed skepticism about the propriety of transplanting the "integrated enterprise" doctrine from the liability to the personal jurisdiction context; see *United Elec. Workers v. 163 Pleasant Street Corporation*, 960 F.2d 1080, 1096 (1992); we note that some of the factors that constitute evidence of an integrated enterprise could also support a finding that a subsidiary was merely a shell for the activities of its parent, for personal jurisdiction purposes. Thus, we will analyze plaintiff's jurisdictional claim on the merits.

Plaintiff correctly asserts that many of the courts who have recently entertained Title VII cases—including the First Circuit—have recognized and adopted the test developed by the National Labor Relations Board for determining whether the control of the parent over a subsidiary is such that they should be deemed one and the same. See, e.g., *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24 (1st Cir.1980). Pursuant to this test, a parent and subsidiary may be considered an integrated enterprise if there is sufficient evidence of "(1) [the] interrelation of operations; (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Id.* at 27. *See also Robins v. Max Mara, U.S.A. Inc.*, 914 F.Supp. at 1008. Also relevant to this inquiry are factors such as whether the parent company exerts considerable influence over personnel policies, advertising and other decisions; and whether it controls the sales goals, marketing strategies, sales catalogues and advertising. *Mas Marques*, 637 F.2d at 26.

Applying the forgoing test to the instant controversy, plaintiff points out various factors which he believes demonstrate the existence of an integrated enterprise. For instance, he argues that the positions, titles, duties and responsibilities of JCC's employees; as well as the safety procedures, sales goals, pricing, and employee regulations used by JCC are all dictated by JCI. He further avers that JCC uses the JCI sales catalog and stationery; and that the products sold by JCC are manufactured by JCI.

In response to plaintiff's assertions, defendant argues that JCC's employees are separate and independent from JCI's; that the former corporation is financially independent from the latter; that each corporation has separate bank accounts, financial books and records; that each files separate tax returns, forecast and year-end statements; that they have separate invoicing, accounts payable, purchasing, inventory, and loss and profit statements; and that they have separate control over all employment aspects, including whether or not to dismiss an employee. Defendant further contends that JCC purchases, sells and distributes products other than JCI's; that JCC controls the prices and sales goals of all its products; and that the only material which it has received from JCI

---

1. Plaintiff does not contend this assertion; he merely focuses on his "integrated enterprise" theory. Thus, we will assume that JCC did not have the required number of employees needed to be subject to ADA's provisions.

2. Plaintiff sued defendant as "John Crane, Inc., d/b/a John Crane Caribe Ltd."

(such as brochures and catalogs) has been of an informational nature and has been used at JCC's discretion.[3]

Based on the forgoing, we cannot conclude that plaintiff has met its burden of demonstrating that the two companies constitute a single enterprise. Even though JCC is admittedly owned by JCI, the truth of the matter is that their daily operations are practically independent from each other, JCC's management is entirely unrelated to JCI's; and there is no centralized control over labor relations. Just as in *Mas Marques,* it did not matter that the subsidiary corporation purchased half its inventory from its parent company and occasionally contracted with its parent company for accounting or bookkeeping services; in the instant case, the fact that JCC purchased some equipment from JCI, used some of its stationery for writing internal memorandums and exercised its own prerogative to use JCI's catalog and resource manual does not, in and of itself, demonstrate that both corporations were actually an integrated enterprise.[4] Given that defendant's affidavits clearly establish JCC's financial, administrative and managerial independence from JCI, we need not discuss its other stated grounds for dismissal. JCI's motion to dismiss **(Docket # 10)** is hereby **GRANTED.**

## B. *Néstor Dávila's Motion to Dismiss*

■ Defendant Néstor Dávila essentially asserts that he is not an employer under either the ADA or the PRWCA, and that neither statute allows a claimant to sue an agent in his individual capacity. He thus requests that the complaint against him be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff does not dispute that Mr. Dávila is being sued in his individual capacity, but rather argues that the plain language of Title VII, ADEA and ADA subjects an employer's agent who engages in discriminatory conduct to personal liability for that conduct.

Although the First Circuit has yet to rule on the forgoing issue, the prevailing view in this district seems to be that:

> the relevant provisions of the ADA are almost identical to the language used in both the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Both the ADEA and Title VII forbid discrimination by an "employer", who is defined as any "person engaged in commerce ... [or] any agent of such a person." ... Thus, all three statutes provide that a supervisor is an employer. The weight of authority suggests, however, that Congress included the "any agent" language to ensure that courts would impose respondeat superior liability upon employers for the acts of their agents, not upon the agents personally.

*Anonymous v. Legal Services Corp.,* 932 F.Supp. 49, 50–51 (D.P.R.1996) (Pérez Giménez, J.). *See also Hernandez v. Wangen,* 938 F.Supp. 1052 (D.P.R.1996) (Laffitte, J.) (whose holding dismissing a Title VII claim against a supervisor in his personal capacity followed those of various First Circuit district courts);[5] *Pantoja v. General Instruments,* 1996 WL 790102 (D.P.R.1996) (Pérez Giménez, J.); and *Bonano v. Banco Bilbao Vizcaya,* 952 F.Supp. 72 (D.P.R.1997) (Domínguez).

We find *Hernandez'* argument to the effect that supervisors should not be subject to individual liability under Title VII persuasive, and thus incorporate it almost *verbatim.* As Judge Laffitte stated, "[t]here is absolutely no mention in the statutory language or in the legislative history of Title VII's application to individual defendants. As it had with other civil rights statutes such as section 1981, Congress could have included individuals like supervisors as potential liable parties," and yet it didn't. 938 F.Supp. at 1064. Moreover, "... [s]everal provisions of Title

---

3. In fact, JCC receives and distributes catalogs from other manufacturers as well.

4. It should be noted that some of plaintiff's assertions are based upon information and belief, whereas defendant's allegations are supported by

affidavits of both JCC's general manager and JCI's vice president of human resources.

5. *Hernandez* also included a detailed analysis of the trend toward denying individual liability against supervisors in this and other circuits.

VII are clearly inapplicable to individuals." *Id.* Given the preceding facts, the Court concluded that: "it would be nothing short of bizarre if Congress placed such heightened emphasis and concern on limiting the damages recoverable against small corporate entities and, yet simultaneously, silently exposed all individual defendants to unlimited liability." *Id.* at 1065.

Based on the forgoing, we conclude, as the *Hernandez* court did, that until Congress decides otherwise, individual defendants like Mr. Dávila should not be held liable under ADA. Defendant's motion **(Docket # 23)** is thus, hereby **GRANTED.**

*Pendent jurisdiction claim*

█ It is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See,* 28 U.S.C. sec. 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in *Gibbs* "seems clearly to require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.* 727 F.Supp. 701, 709 (D.Me.1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit". *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991).

Although District Courts are not obligated to dismiss pendent state law claims, in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); citing *Gibbs* 383 U.S. at 726–727, 86 S.Ct. at 1139–1140; see *Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir.1992); *Rivera v. Murphy,* 979 F.2d 259, 264 (1st. Cir.1992); *Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir.1990); *cf Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st. Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st. Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

Supplemental jurisdiction should be declined in this case in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issued raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7, citing *Gibbs* 383 U.S. at 726, 86 S.Ct. at 1139. Since plaintiff is not entitled to any award under the ADA, the only award plaintiff could, in any event, pursue would be under the PRWCA.

In view of the above discussion, this Court will decline to exercise jurisdiction over plaintiff's remaining state claim against the defendants. Judgment shall be entered accordingly.

**SO ORDERED.**