**Victor VICENTY MARTELL, et al., Plaintiffs,**

v.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO, et al., Defendants.**

**No. Civ. 98–1352(SEC).**

United States District Court, D. Puerto Rico.

March 29, 1999.

George Uzdavinis–Velez, Mayaguez, Puerto Rico, for plaintiffs.

Gloria Robison–Guarch, Department of Justice, Federal Litigation Division, San Juan, Puerto Rico; Reynaldo J. Salas–Soler, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This is an action brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621—*et seq.;* the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101—*et seq.;* the Civil Rights Act, 42 U.S.C. § 1983; the First, Fifth and Fourteenth Amendments to the United States Constitution; and various provisions of state law. Plaintiffs are Victor Vicenty Martell, his wife and their conjugal partnership. Named as defendants are the Commonwealth of Puerto Rico; the Puerto Rico Department of Education and its Secretary, Víctor Fajardo; school district superintendent Gracia M. Ruiz de Talavera; the Puerto Rico Industrial Commission; and the Retirement Board for the School Teachers of Puerto Rico.

Pending before the Court are two separate motions to dismiss (**Dockets # 8, 9**), one by the Retirement Board; the other by the remaining co-defendants. Both remain unopposed. For the reasons set forth below, both motions to dismiss (**Dockets # 8, 9**) are hereby **GRANTED IN PART** and **DENIED IN PART.**

### Background

After a strenuous effort to separate the wheat from the chaff, we summarize the pertinent facts of the complaint in the light most hospitable to plaintiffs as follows. Plaintiff Víctor Vicenty Martell was employed for twenty-nine years by the Puerto Rico Department of Education. During the time of his employment, he held various positions, including one as a classroom teacher. Later, however, due to a "physical condition[,] he obtained reasonable accommodation," and was reassigned to an administrative position (**Docket # 1 at ¶ 42**). He worked at the Manuel A. Barreto Public School, located within the Mayagüez North I School District, which was under the direction of superintendent, and herein co-defendant, Ruiz de Talavera. **Id. at ¶¶ 6, 10.**

According to plaintiff, Ruiz de Talavera "took several discriminatory decisions against ... [him] because of ... [his] physical handicap[,] and ... deprived him of his reasonable accommodation." **Id. at ¶ 42.** He also claims that Ruiz de Talavera requested his early retirement from the Department of Education because of his age and physical handicap, and that she "discriminated against ... [him] when she took some decisions to deprive ... [him] from (sic) his civil rights." **Id. at ¶ 21.**

On May 28, 1992, at the age of fifty-five, plaintiff was allegedly forced to accept early retirement "under threat of termination[ ] by superiors and administrative officers of the ... Department of Education," solely on the basis of his age. **Id. at ¶¶ 22–24, 28.** He further asserts that he was "demot[ed] and discharg[ed] ... from [his] employment[,] because of ... [his] physical handicap or condition, and in retaliation for ... [his] complaints of defendant's discriminatory treatment of ... [him] to defendant and appropriate authorities, all while giving ... [him] pretextual or untrue reasons for the termination." **Id. at ¶ 43.**

Moreover, plaintiff claims that as part of their retaliatory actions, defendants "provid[ed] untrue, misleading and unfavorable references and employment recommendations to potential and prospective employers." **Id. at ¶ 44.** According to him, defendants still keep retaliating against him by interfering with an appeal which he has pending before the Puerto Rico Industrial Commission. This appeal arose from a

decision issued by the Puerto Rico State Insurance Fund on October 15, 1990, in a proceeding initiated by plaintiff on March 30, 1990. He claims that defendants' "fault and negligence" has prompted the continuance of various hearings scheduled in connection with his appeal. He contends that defendants' "faults (sic) and negligent acts are part of the strategy used by the[m][1] ... to keep discriminating against ... [him] because of his age, his physical handicap[,] and because he reported such negligent acts to the corresponding authorities." **Id. at ¶ 21.** Finally, plaintiff contends that he was discharged without just cause, notice, or hearing; and that the Retirement Board failed to recognize the effective date of his retirement until March 26, 1993. **Id. at ¶¶ 21, 29.**

The Retirement Board argues that plaintiff's allegations fail to state a claim upon which relief can be granted, essentially, because no employee-employer relationship existed or exists between them. The Retirement Board also moves for dismissal based on *res judicata* and time-bar. The remaining co-defendants base their motion to dismiss on Eleventh Amendment grounds, lack of subject matter jurisdiction, statute of limitations, and failure to state a claim. They also move to dismiss the claims of plaintiff's wife and their conjugal partnership for lack of standing.

**Applicable Law/Analysis**

**A. Motion to Dismiss Standard**

In assessing whether dismissal pursuant Fed.R.Civ.P. 12(b)(6) for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142

F.3d 507, 508 (1st Cir.1998) (citations omitted). Thus, a dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). However, as the First Circuit has noted, "[a]lthough this standard is diaphanous, it is not a virtual mirage. To survive a motion to dismiss, a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)).

In this case, we initially construe plaintiff's allegations as presenting claims for discriminatory constructive discharge in violation of the ADEA and the ADA, and retaliatory claims under both statutes. Inasmuch as defendants' arguments concerning *res judicata,* time-bar, and lack of subject matter jurisdiction are based on matters outside the complaint, we shall ignore them in our analysis. *See Garita Hotel Limited Partnership, Etc. v. Ponce Federal Bank,* 958 F.2d 15, 18 (1st Cir. 1992) (suggesting that in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, the trial court should expressly reject any supplementary materials filed by the moving party); *see also Whiting v. Maiolini,* 921 F.2d 5, 7 (1st Cir.1990) (holding that it is inappropriate to convert a Rule 12(b)(6) into a Rule 56 motion when nonmovant has not been af-

---

1. Here, plaintiff makes reference to a certain Mrs. Myrta Ramirez. This person, however, is neither mentioned as a defendant in the complaint, nor has she been served process. Accordingly, we shall not consider her as a proper party to this action.

forded opportunity to respond to unannounced conversion, discovery has barely begun, and defendant has not answered the complaint); *Maldonado v. Dominguez*, 137 F.3d 1, 6 (1st Cir.1998) (in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, district court must ignore matters outside the pleadings); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997) (same); *Vega–Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 177 (1st Cir.1997) (same); *but see Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998) (determining documents that "defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.") (internal quotation marks and citation omitted).

## B. The ADEA Claim

 Under the ADEA, "the plaintiff bears the ultimate burden of proving that he would not have been fired but for his age." *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir.1997) (citation and internal quotation marks omitted). To establish a prima facie case of age discrimination in violation of the ADEA, the aggrieved party must establish that he or she: (i) was within the protected age group; that is, over forty years of age; (ii) met the employer's employment expectations; (iii) was actually or constructively discharged; and (iv) that the employer sought a replacement with roughly similar skills or qualifications. *See id.; see also Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir.1993); *Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Hidalgo v. Overseas–Condado Insurance Agencies, Inc.*, 929 F.Supp. 555, 559 (D.P.R.1996) (Casellas, J.), *aff'd*, 120 F.3d 328 (1st Cir. 1997).

 In this case, plaintiff was not dismissed outright; he was allegedly forced to accept early retirement under threat of termination. To satisfy the third element of the prima facie case standard, he would need to show that he was constructively discharged. *See Vega*, 3 F.3d at 479. In cases involving an employer's offer for early retirement, "an ADEA plaintiff claiming that he was, in effect, fired by being forced into retirement must show that his employer's 'offer' was but an empty sham masking its decision to fire the plaintiff because of his age." *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1111 (1st Cir. 1989). As the First Circuit has explained:

> To transform an offer of early retirement into a constructive discharge, a plaintiff must show that the offer was nothing more than a charade, that is, a subterfuge disguising the employer's desire to purge plaintiff from the ranks because of his age. Under this dichotomy, offers which furnish employees a choice in name only are impermissible because, in the final analysis, they effectively vitiate the employee's power to choose work over retirement. Phrased another way, the law regards as the functional equivalent of a discharge those offers of early retirement which, if refused, will result in work so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities. In terms of this standard, a plaintiff who has accepted an employer's offer to retire can be said to have been constructively discharged when the offer presented was, at rock bottom, "a choice between early retirement with benefits or discharge without benefits," or more starkly still, an "impermissible take-it-or-leave-it choice between retirement or discharge."

*Vega*, 3 F.3d at 480 (citations omitted). *See also American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 122 (1st Cir. 1998) (same); *but see Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 27 (1st Cir.1998) (noting that an offer of early retirement "is not, by

itself, evidence of constructive discharge or discriminatory animus.") (citations omitted).

Here, plaintiff's contention that he was "forced to accept early retirement under threat of termination[ ] by superiors and administrative officers of the ... Department of Education," solely on the basis of his age, (**Docket # 1 at ¶¶ 22–24, 28**), seems rather "bald," *Aulson*, 83 F.3d at 3, and accordingly should "carry no weight." *Berner*, 129 F.3d at 25. However, even taking plaintiff's averments in the light most hospitable to his case, and thus assuming that his allegations meet the first three elements of the prima facie case standard,[2] we find that his ADEA claim is still insufficient. Plaintiff does not allege that he was replaced by another person of similar skills and qualifications, *Vega*, 3 F.3d at 479, or that his employer sought a replacement with roughly similar skills or qualifications. *See Serrano–Cruz*, 109 F.3d at 25. Accordingly, plaintiff's claim for discriminatory constructive discharge in violation of the ADEA should be dismissed as to all defendants. In making this determination, we take into account that plaintiff is not a pro-se complainant; he is represented by counsel. The prima-facie-case standard under the ADEA is well established, and we cannot fathom any justifiable reason for excusing counsel for his insufficient pleading.

Alternatively, plaintiff's claims of discriminatory discharge in violation of the ADEA and the ADA should be dismissed against Secretary Fajardo and superintendent Ruiz de Talavera, because, while neither the Supreme Court nor the First Circuit have ruled on the issue, the prevailing view in this district seems to be that supervisors should not be subject to individual liability under the ADEA or the ADA. *See Moreno v. John Crane, Inc.*, 963 F.Supp. 72, 76 (D.P.R.1997) (Casellas, J.) (ADA); *Flamand v. American Int'l*

*Group, Inc.*, 876 F.Supp. 356, 361–64 (D.P.R.1994) (ADEA). In this connection, it should be noted, moreover, that although plaintiff alleges that he was an employee of the Department of Education, he does not allege that he was an employee of the Industrial Commission or the Board of Retirement. Therefore, plaintiff's claim of discriminatory discharge under the ADEA and the ADA should also be dismissed against said co-defendants. *See E.E.O.C. v. Puerto Rico Job Corps*, 729 F.Supp. 208, 217 (D.P.R.1990) (determining that "[a]n aggrieved employee alleging discrimination must establish that an employee-employer relationship exists in order to successfully allege a claim under ADEA.").

## C. The ADA Claim

To establish a prima facie case of discrimination in violation of the ADA, a plaintiff must show "(1) that he or she suffers from a 'disability' within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged him or her in whole or in part because of that disability." *Feliciano v. State of Rhode Island*, 160 F.3d 780, 784 (1st Cir.1998) (citation omitted).

In this case, plaintiff alleges that he is a disabled individual within the meaning of the ADA, and that he is able to perform his duties with reasonable accommodation (**Docket # 1 at ¶ 40**). He avers that at some point during the time of his employment he was afforded reasonable accommodation, resulting in his reassignment "from his position of class teacher to teacher registrator (sic) with administrative functions." *Id.* at ¶ 42. He contends, furthermore, that he was demoted and discharged because of his "physical handicap or condition," and that he was "deprived of his reasonable accommodation." **Id.**

**2.** Regarding the first element, plaintiff alleges that he was fifty-five years old when he was forced to retire. As to the second element, it may be fairly inferred from the alleged duration of his employment—twenty-nine years—that his job performance was adequate.

At the outset, we dismiss plaintiff's claim that he was demoted on the basis of his "handicap or condition." Plaintiff's only reference to a demotion is found in ¶ 42 of the complaint, unaccompanied by any substantiating facts. For example, plaintiff does not state when did this demotion occur, or how did it occur; that is, from what position was · he demoted. Plaintiff's only reference to what could be very liberally construed as a transfer is his reassignment from a position as a classroom teacher to another with administrative duties. As plaintiff avers, however, this reassignment was motivated by his employer's decision to afford him reasonable accommodation. *Id.* Plaintiff does not contend, and it would be contradictory to do so, that his employer's decision to afford him reasonable accommodation by assigning him different duties was prompted by a discriminatory animus. Plaintiff's contention can only be characterized as bare-boned.

Plaintiff's assertion that he was "deprived of his reasonable accommodation" is similarly lacking in factual support, and the only fair inference that we can draw in this regard is that plaintiff was so deprived when he was allegedly forced to retire. Thus, we only address his claim of discriminatory discharge in violation of the ADA. Assuming that he was in fact threatened with termination if he did not retire early, we find, at least at this procedural stage, that plaintiff does have a colorable claim of discrimination under the ADA.

However, plaintiff's claim of discriminatory discharge under the ADA should be dismissed against Secretary Fajardo and superintendent Ruiz de Talavera, since, as previously discussed, supervisors are not subject to individual liability under the ADA. *See Moreno*, 963 F.Supp. at 76; *Flamand*, 876 F.Supp. at 361–64. Plaintiff's ADA claim of discriminatory discharge should also be dismissed against the Industrial Commission and the Retirement Board, because plaintiff does not aver that he had an employee-employer relationship with either entity. *Cf. Puerto Rico Job Corps*, 729 F.Supp. at 217. Accordingly, plaintiff may only assert his claim of discriminatory discharge under the ADA against the Commonwealth and the Department of Education.

### D. The Retaliation Claims

To establish a case of retaliation under the ADEA or the ADA, the complainant has to make a prima facie showing that (1) he or she engaged in protected conduct; (2) that he or she was subject to an adverse employment action; and (3) a that causal connection existed between the protected conduct and the adverse action. *See, e.g., Mesnick*, 950 F.2d at 827; *Soileau*, 105 F.3d at 16.

The ADEA prohibits an employer from discriminating "against any of his employees ..., because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Similarly, the ADA forbids discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

In this case, plaintiff does not allege that he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, hearing or litigation under either statute. He avers, however, that he complained to defendants (presumably the Department of Education and/or superintendent Ruiz de Talavera) and to the "appropriate authorities" (without specifying any) about defendants' "discriminatory treatment" (again, presumably the Department of Education and/or superintendent Ruiz de Talavera) (**Docket # 1 at ¶¶ 21, 43**). We take plaintiff's contention in the light most favorable to his

case, and construe it simply as stating that he was constructively discharged for having opposed discriminatory practices against him. Plaintiff also alleges that defendants have retaliated against him (1) by interfering with his pending appeal before the Industrial Commission, and (2) by providing unfavorable job references. Plaintiff's allegations, if true, would come under the scope of the ADEA and the ADA's anti-retaliation provisions.[3] *See* 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a).

However, plaintiff's retaliation claims are not individually sustainable against Secretary Fajardo and superintendent Ruiz de Talavera, because, as stated above, only employers may be liable under the ADEA or the ADA. *See Moreno,* 963 F.Supp. at 76; *Flamand,* 876 F.Supp. at 361–64. Plaintiff's retaliation claim under the ADEA and the ADA should also be dismissed against the Retirement Board and the Industrial Commission, because he fails to allege that either entity employed him. *See Puerto Rico Job Corps,* 729 F.Supp. at 217.

### E. The Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In order to establish a prima facie claim under § 1983, the complaining party must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct constitutes a deprivation of a constitutional right or a federal statutory right. *See Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662; *Martinez–Rodriguez v. Colon–Pizarro,* 54 F.3d 980 (1st Cir.), *cert. denied,* 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); *Martinez–Velez v. Simonet,* 919 F.2d 808, 810 (1st Cir.1990).

In their motion to dismiss, the Commonwealth, the Industrial Commission, the Department of Education, Secretary Fajardo, and superintendent Ruiz de Talavera argue that the ADEA and the ADA preclude plaintiff's § 1983 claims, because these statutes respectively provide the exclusive remedies for age and disability discrimination for state government employees.

Neither the Supreme Court nor the First Circuit have squarely addressed this

---

**3.** It is of no consequence to his retaliation claims that plaintiff has failed to present a claim of discrimination under the ADEA. *See Mesnick,* 950 F.2d at 827 (holding that a plaintiff who fails to establish a claim of discrimination may still assert a retaliation claim under the ADEA or the ADA); *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir.1997) (same).

Also, regarding plaintiff's claims of retaliation based on defendants' interference with his administrative appeal, and defendants' unfavorable job references, we note that the ADEA's and the ADA's anti-retaliation provisions may reach beyond ultimate employment decisions, such as discharge, transfer or demotion. *See Wyatt v. City of Boston,* 35 F.3d 13, 15–16 (1st Cir.1994) (stating that actions other than discharge, such as "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees," come under the scope of Title VII's anti-retaliation provision) (citation omitted); *Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994) (stating that the ADEA's anti-retaliation provision extends beyond discharge, demotion or failure to promote, and that a "case by case review" is necessary to determine whether an employer's action constitutes an adverse employment action for purposes of stating a prima facie case of retaliation); *La Rou v. Ridlon,* 98 F.3d 659, 663 (1st Cir.1996) (same); *Blackie v. State of Maine,* 75 F.3d 716, 725 (1st Cir.1996) (same).

issue. Regarding the ADEA, the First Circuit has specifically declined to resolve whether the ADEA provides the exclusive remedy for age discrimination in the employment, thus preempting suits under § 1983. *See Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 469 (1st Cir.1990). In *Izquierdo Prieto*, however, the First Circuit noted, albeit in dicta, that "the ADEA and its amendments provide a comprehensive statutory remedy that may not be bypassed through the means of an action under 42 U.S.C. § 1983," and that, therefore, a plaintiff would be barred from bringing suit under § 1983 premised on a violation of his or her statutory rights under the ADEA. *Id.* at 469.

On the other hand, the First Circuit has held that a sexual harassment plaintiff may present his or her claim under Title VII or § 1983. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895–96 (1st Cir.1988) (permitting concurrent causes of action for employment discrimination under Title VII and § 1983) (decided before the 1991 amendments to Title VII); *Pontarelli v. Stone*, 930 F.2d 104, 113 (1st Cir.1991) (on-the-job sexual harassment claims are within the purview of § 1983). District courts within this circuit, however, have reached different conclusions after the passage of the 1991 amendments to Title VII. *See Marrero–Rivera v. Department of Justice*, 800 F.Supp. 1024, 1031–32 (D.P.R.1992) (Fusté, J.) (1991 amendments to Title VII provided comprehensive remedy for employment discrimination and preempts such claims under § 1983); *Ribot Espada v. Woodroffe*, 896 F.Supp. 69, 71 (D.P.R.1995) (Casellas, J.) (Title VII does not provide the exclusive remedy for victims of sexual harassment in public employment); *Madon v. Laconia School District*, 952 F.Supp. 44, 48 (D.N.H.1996) (concluding that since the First Circuit has not reevaluated the question of whether Title VII preempts § 1983 constitutional claims for employment discrimination after the 1991 amendments to Title VII, *Lipsett* continues to provide the applicable rule of law); *Chapin v. University of Massachu-*setts at Lowell, 977 F.Supp. 72, 81 (D.Mass.1997) (same).

It could be argued that because of the similarities shared by Title VII and the ADEA, and because actions pursuant to the ADA are subject to Title VII's enforcement provisions, *see* 42 U.S.C. § 12117; *Chico Velez v. Roche Products, Inc.*, 971 F.Supp. 56, 58 (D.P.R.1997), it would be illogical to conclude that while concurrent § 1983 and Title VII claims may be compatible, concurrent § 1983 and ADEA or ADA claims may not. *See Hornfeld v. City of North Miami Beach*, 29 F.Supp.2d 1357, 1365 (S.D.Fla.1998). The fact still remains that neither the Supreme Court nor the First Circuit have addressed these questions.

However, other circuits which have addressed the issue, have reached the conclusion that the ADEA and the ADA respectively provide the exclusive remedies for age and disability discrimination, and thus preempt such claims under § 1983. *See, e.g., Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989) (ADEA); *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir.1998) (ADEA); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir.1997) (ADA). At least one circuit has limited its holding stating that the ADEA preempts age discrimination claims under § 1983, stating that "where the facts alleged will not independently support a § 1983 claim, the plaintiffs age discrimination claim is preempted by the ADEA." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 760 (5th Cir.1997). This statement is more akin to the First Circuit's dicta in *Izquierdo Prieto. See* 894 F.2d at 469.

We agree with the reasons provided by the Fourth, Fifth, Tenth and Eleventh Circuits for holding that the ADEA and the ADA respectively provide comprehensive exclusive remedies for age and disability discrimination, and that, therefore, a state government employee may

not bring suit under § 1983, premised on the deprivation of the rights provided by those statutes, unless, as suggested by the Fifth Circuit, he or she alleges facts which will independently support a § 1983 claim.

Accordingly, plaintiff's § 1983 claim for deprivation of his ADEA and ADA rights should be dismissed. We shall assess, therefore, whether plaintiff has alleged facts which could independently support a claim under § 1983. Liberally construed, plaintiff's complaint could be read as alleging a deprivation of his property interest to continued employment in violation of the Equal Protection and Due Process clauses.[4]

■ "One who asserts that governmental action violates the Equal Protection Clause must show that he or she is the victim of intentional discrimination." *Judge v. City of Lowell*, 160 F.3d 67, 75 (1st Cir.1998) (citation and internal quotation marks omitted). Because the right to government employment per se is not a fundamental right, *see Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and because neither the aged nor the disabled are a suspect class, *see Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 445, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), plaintiff's equal protection claim is subject to a rational basis analysis. Under this standard, the challenged governmental action will be sustained, "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only [lead to the conclusion] that the

[such] action[ ] ... [was] irrational." *Ashcroft*, 501 U.S. at 471, 111 S.Ct. 2395 (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)) (internal quotation marks omitted).

■ In this case, it can be inferred from plaintiff's allegations that the decision to terminate his employment had no rational basis, and was motivated by a discriminatory intent, i.e., age and disability. This inference is sufficient for his § 1983 claim to survive a motion to dismiss.

■ Plaintiff also alleges that defendants' actions violated his First Amendment rights (**Docket # 1 at ¶ 12**). He presumably[5] invokes the First Amendment in connection with his with his claims that defendants have retaliated against him for having complained about the discriminatory actions allegedly taken against him. "The First Amendment's guarantee of freedom of speech protects government employees from termination *because* of their speech on matters of public concern." *Bd. of County Commissioners v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996) (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The First Circuit has employed a three-part test to determine whether a government employee has an actionable claim for violation of his or her freedom of speech right.

First, the court must determine whether ... [the employee] made her statements as a citizen upon matters of public concern. If the speech involved matters not of public concern, but instead ... of personal interest, absent the most unusual circumstances, a federal court is

---

4. As the Supreme Court has held, "Puerto Rico is subject to the ... Due Process clause of either the Fifth or the Fourteenth Amendment, and the equal protection guarantee of either the Fifth or the Fourteenth Amendment." *Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico*, 478 U.S. 328, 331 n. 1, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986) (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668–69 n. 5, 94

S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Examining Board v. Flores de Otero*, 426 U.S. 572, 599–601, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); *Torres v. Puerto Rico*, 442 U.S. 465, 468–71, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979)).

5. We say presumably because plaintiff does not clearly articulate the bases of his First Amendment claim in his complaint.

not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Second, the court must weigh the strength of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace. Third, if the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech, ... [the employee] must show that the protected expression was a substantial or motivating factor in an adverse employment action. *Tang v. Rhode Island,* 163 F.3d 7, 11 (1st Cir.1998) (internal citations and quotation marks omitted).

■ Plaintiff's alleged complaints to defendants and to "the appropriate authorities" (**Docket at ¶¶ 21, 43**) about the discriminatory conduct allegedly demonstrated against him could probably rise to the level of constitutionally protected speech which would satisfy the first prong of the above-described test. However, based on the scant information available on the record, we can go no further. Defendants also do not address this issue in their respective motions to dismiss. Therefore, plaintiff's colorable First Amendment claim under § 1983 should not be dismissed.

■ It is well settled, however, that neither a State, a state agency nor a state official acting in her or his official capacity may be sued for damages in a § 1983 action. *See, e.g., Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698 700 (1st Cir.1995); *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991);

*Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This is so because § 1983 did not abrogate an unconsenting state's Eleventh Amendment immunity from being sued in damages in federal court. *See Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Will,* 491 U.S. at 66–67, 109 S.Ct. 2304. This protection also extends to the Commonwealth of Puerto Rico. *See, e.g., Negron Gaztambide v. Hernandez Torres,* 145 F.3d 410, 415 n. 7 (1st Cir.1998); *Fred v. Aponte Roque,* 916 F.2d 37, 38 (1st Cir.1990). Therefore, plaintiff's claim for against the Commonwealth, the Industrial Commission,[6] the Department of Education, Secretary Fajardo, and superintendent Ruiz de Talavera, in their official capacity,[7] is insupportable as a matter of law, and should be dismissed accordingly.[8]

■ On the other hand, equitable relief is not covered by the Eleventh Amendment immunity. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Chaulk Serv., Inc. v. Mass. Com'n,* 70 F.3d 1361 (1st Cir.1995). Thus, plaintiff's claim for injunctive relief should be maintained as to all defendants. Moreover, plaintiff's colorable § 1983 claim against Secretary Fajardo and against superintendent Ruiz de Talavera in their individual capacity should also remain undisturbed. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991) (holding that state officials may be held individually liable under § 1983).

### F. Standing

■ Plaintiff's spouse and their conjugal partnership do not have standing un-

---

6. The Puerto Rico Industrial Commission is an agency of the Commonwealth with quasi-judicial functions, created pursuant to the Compensation System for Work–Related Accidents Act, Law No. 45 of April 18, 1935, as amended, P.R.Laws Ann., tit. 11, § 8(b) (1997). *See, e.g., Agosto Serrano v. F.S.E.,* 132 D.P.R. 866, 875 (1993).

7. In *Smothers v. Benitez,* 806 F.Supp. 299, 302 (D.P.R.1992) it was established that the Department of Education and its Secretary are protected from a damages action under § 1983.

8. Because the Retirement Board does not argue that it is a state agency protected from § 1983, the Court will not address the issue.

der the ADEA because they are not employees for purposes of the statute. *See Flamand,* 876 F.Supp. at 372; *Ramos v. Roche Products, Inc.,* 694 F.Supp. 1018, 1026 (D.P.R.1988), *vacated on other grounds,* 880 F.2d 621 (1989); *Paredes Figueroa v. International Air Services of Puerto Rico,* 662 F.Supp. 1202, 1202 (D.P.R.1987). Plaintiff's spouse and their conjugal partnership also do not meet any of the necessary elements to establish a retaliation claim under the ADEA.

■ Furthermore, because neither plaintiff's wife nor their conjugal partnership have asserted a claim of direct constitutional deprivation, they lack standing under § 1983. *See, e.g., Robles Vazquez v. Garcia,* 110 F.3d 204, 206 n. 4 (1st Cir. 1997); *Torres v. United States,* 24 F.Supp.2d 181, 183 (D.P.R.1998). Plaintiff's spouse and their conjugal partnership, however, may pursue their claims for lost earnings. *See Rodriguez–Rios v. Cordero,* 138 F.3d 22, 26 (1st Cir.1998); *Torres,* 24 F.Supp.2d at 183–84.

### G. Supplemental Claims

■ Defendants argue that plaintiff's state law claims should be dismissed because he failed to specifically plead 28 U.S.C. § 1367 in invoking supplemental jurisdiction for his state law claims. This contention is without merit. Although plaintiff did not specifically plead the statute, he did unambiguously petition the court to exercise supplemental jurisdiction over his state law claims. Since we have determined that some of plaintiff's federal causes of action should not be dismissed, we shall not decline to exercise supplemental jurisdiction over his state law claims at this stage.

### H. Conclusion

For the foregoing reasons, the Court finds that following claims should be, and are hereby, **DISMISSED:** (1) plaintiff's claim of discriminatory discharge in violation of the ADEA, as to all defendants; (2) plaintiff's claim of discriminatory dis-

charge in violation of the ADA, as to Secretary Fajardo, superintendent Ruiz de Talavera, the Industrial Commission and the Retirement Board; (3) plaintiff's claims of retaliation under the ADEA and the ADA, as to Secretary Fajardo, superintendent Ruiz de Talavera, the Industrial Commission and the Retirement Board; (4) plaintiff's monetary claims under § 1983 for deprivation of his First Amendment, equal protection and due process rights, as to the Commonwealth, the Department of Education, the Industrial Commission, and Secretary Fajardo and superintendent Ruiz de Talavera, in their official capacity; and (5) plaintiff's spouse and their conjugal partnership's claims under the ADEA, the ADA, and of direct constitutional deprivation under § 1983.

The following claims, however, will not be dismissed: (1) plaintiff's claim of discriminatory discharge under the ADA against the Commonwealth and the Department of Education; (2) plaintiff's retaliation claims under the ADEA and the ADA against the Commonwealth and the Department of Education; (3) plaintiff's claim for equitable relief under § 1983 against all defendants; (4) plaintiff's claims for monetary relief under § 1983 against Secretary Fajardo and superintendent Ruiz de Talavera, in their individual capacity; (5) plaintiff's supplemental state law claims; and (6) plaintiff's spouse and their conjugal partnership's claim for lost earnings. For the foregoing reasons, defendants' separate motions to dismiss (**Dockets # 8, 9**) are hereby **GRANTED IN PART AND DENIED IN PART.** The Court expresses no opinion, however, on whether this complaint could withstand a properly documented motion for summary judgment. Partial judgment shall be entered accordingly.

**SO ORDERED.**